## 65290. FRITTS v. MID-COAST TRADING CORPORATION, INC. et al.

SOGNIER, Judge.

Appellee Mid-Coast Trading Corporation, Inc. (Mid-Coast) filed a complaint seeking a declaration of its rights and liabilities under the Declaratory Judgment Act (OCGA § 9-4-2; former Code Ann. § 110-1101). Named as a defendant was appellant David H. Fritts, a Savannah attorney, from whom Mid-Coast alleged it had purchased a generator located in the Southern Bell Telephone

Company building for $2,500. Also named as a defendant was appellee Atlanta Steel Supply Company (Atlanta Steel) which, unknown to Mid-Coast, had previously purchased the generator from Southern Bell but failed to remove it from the building. Subsequent to the alleged purchase of the generator from Fritts, Mid-Coast contracted to sell and deliver it to another party for $12,900. Mid-Coast sought either to be declared rightful owner of the generator or to recover damages from Fritts for breach of warranty of title including expenses of litigation and attorney fees. Atlanta Steel filed a cross-claim for $6,000 against Fritts for conversion to his own use of certain parts and components of the generator. A jury verdict was returned against Fritts in favor of Mid-Coast in the amount of $2,500 plus $9,839.16 expenses of litigation and attorney fees, and requiring Fritts to return to Atlanta Steel those portions of the generator which he had removed. This appeal is brought from the denial of Fritts' motions for judgment notwithstanding the verdict and for new trial. Appellant's enumerations of error raise only two basic issues: whether there was sufficient evidence to sustain the jury's verdict awarding Mid-Coast $2,500 and expenses of litigation and attorney fees; and whether the return of the property to Atlanta Steel was authorized.

Review of the trial transcript establishes the following essential facts. In late 1979 Southern Bell and Atlanta Steel entered into a written contract whereby Atlanta Steel paid $36,889.89 for salvage materials, which it agreed to remove by April 5, 1980 from a building owned by Southern Bell. Included in the salvage materials was a 37,500 pound emergency power generator, located in the basement of the building and tied into the electrical system. By April 5 all the salvage materials had been removed except the diesel engine and alternator of the generator. On that date Fritts and one Michael J. Curran met with two employees of Atlanta Steel who were working in the Southern Bell building. Fritts asserts that he acquired title to the generator through a verbal agreement made then with these men to remove the remaining parts of the generator. Atlanta Steel denied their employees authority to make such an agreement. Nevertheless, on April 6 Fritts removed two electric motors and other parts of the generator totalling about 1,500 to 2,000 pounds, and on May 1 sold the entire generator to Mid-Coast for $2,500. In June Atlanta Steel with great difficulty completed removal of the engine and alternator. On June 30 Mid-Coast sold the generator to Atlas Land and Gravel, Inc. for $12,920, but when Mid-Coast's president took Atlas' president to the Southern Bell building to see about removing it, they discovered it had already been taken out by Atlanta Steel. Mid-Coast's president asked Fritts to refund the $2,500 it paid for the

generator, and upon Fritts' refusal filed the instant action.

1. Appellant contends the trial court erred in failing to direct a verdict in his favor because no contract existed between Mid-Coast and Fritts as he dealt solely with a man named Jim Brinson. However, Brinson was an employee of Mid-Coast and Fritts admitted receiving and cashing the check issued by Mid-Coast, and turning over the key to the Southern Bell building to Mid-Coast's president. Nor does it appear that Brinson personally demanded return of the $2,500 when the sale fell through, as Mid-Coast did. In any event, it is clear that Fritts breached his warranty of title to the Mid-Coast purchaser of the generator.

Under the Uniform Commercial Code the seller warrants that his title "shall be good, and its transfer rightful . . ." OCGA § 11-2-312 (1) (a) (former Code Ann. § 109A-2—312 (1) (a)). This means that the purchaser is to get " 'a good, clean title transferred to him also in a rightful manner so that he will not be exposed to a law suit in order to protect it.' " R. C. Craig, Ltd. v. Ships of the Sea, Inc., 345 FSupp. 1066, 1074 (fn. 8) (S. D. Ga. 1972). "After the verdict of a jury has been returned the evidence is construed most favorably to the prevailing party as every presumption and inference is in favor of the verdict. [Cits.] The trial court correctly denied the [appellant's] motion[s for judgment notwithstanding the verdict or] for new trial as it cannot be said that the verdict of the jury was contrary to the evidence and without evidence to support it." *Hill Aircraft &c. Corp. v. Tyler,* 161 Ga. App. 267, 268 (1) (291 SE2d 6) (1982); *Gibson v. Talley,* 162 Ga. App. 303 (1) (291 SE2d 72) (1982).

2. While Atlanta Steel's cross-claim sought to recover in trover for the items removed by Fritts, at trial it elected to accept a verdict for the property pursuant to OCGA § 44-12-151 (former Code Ann. § 107-105). Appellant complains that the evidence did not warrant the return of these items, asserting that by virtue of an oral contract with an employee of Atlanta Steel he and Michael Curran assumed responsibility for removing the diesel engine and alternator with the understanding that if they sold them for a lot of money they would all share in the profits. Of course Atlanta Steel claimed title to the entire generating plant under its written contract of sale with Southern Bell, and no purchase price was paid to either Southern Bell or Atlanta Steel by Fritts for the parts he removed. The issues as to who had title, and whether or not these fixtures became attached to the realty and could not be removed, or whether Fritts' partial performance excepted his alleged oral contract from the statute of frauds, as he asserts, were questions of disputed fact properly left to the jury to resolve. *Kornegay v. Thompson,* 157 Ga. App. 558 (278 SE2d 140) (1981); *Aquafine Corp. v. Fendig Outdoor Advertising Co.,*

155 Ga. App. 661 (1) (272 SE2d 526) (1980); *Allen & Bean v. American &c. Ins. Co.,* 153 Ga. App. 617, 619 (266 SE2d 295) (1980); OCGA § 13-5-31 (former Code Ann. § 20-402). The jury was authorized to find that Atlanta Steel had good title to the parts removed by Fritts and was entitled to their return.

3. Nor do we agree that it was reversible error to allow the award of attorney fees and expenses of litigation to Mid-Coast. "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Code Ann. § 20-1404 (now OCGA § 13-6-11). "It is only necessary for the plaintiff to show that one of the three conditions required by the statute exists. [Cit.] A mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness or causing unnecessary trouble and expense. [Cits.] The key to the test is whether there is a 'bona fide controversy.' Where none exists, forcing a plaintiff to resort to the courts in order to collect is plainly causing him to go to 'unnecessary trouble and expense.' [Cit.]" *Franchise Enterprises v. Ridgeway,* 157 Ga. App. 458, 460 (2) (278 SE2d 33) (1981).

When Mid-Coast learned of the written contract between Atlanta Steel and Southern Bell, its president went to Fritts for an explanation and requested that the $2,500 paid Fritts for Atlanta Steel's generator be refunded. Fritts refused and advised Mid-Coast's president to "go get an attorney." Fritts never offered or agreed to refund Mid-Coast's money and Mid-Coast had no recourse except to seek legal advice and institute litigation. The resulting trial lasted four days and Fritts offered no reasonable defense as to his breach of warranty of good title. Where there is such evidence of stubborn litigiousness attorney fees are authorized under OCGA § 13-6-11 (Code Ann. § 20-1404), regardless of the amount of the recovery. *Ga.-Carolina Brick &c. Co. v. Brown,* 153 Ga. App. 747 (2B) (266 SE2d 531) (1980). Since it cannot be said as a matter of law that Fritts had a reasonable defense to the breach of his contract with Mid-Coast, and there is evidence to support the verdict, the judgment must be affirmed. *Ken-Mar Constr. Co. v. Bowen,* 245 Ga. 676 (266 SE2d 796) (1980); *Fuller v. Moister,* 248 Ga. 287 (282 SE2d 889) (1981); *Assaf v. Coker,* 157 Ga. App. 432 (5) (278 SE2d 82) (1981). We find no grounds for reversal for any reason assigned.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 10, 1983 —
REHEARING DENIED MARCH 28, 1983 —

Alton D. Kitchings, David H. Fritts, for appellant.
Alan S. Lowe, Lamar C. Walter, for appellees.