67906, 67907. ANDERSON CONSTRUCTION COMPANY OF FORT GAINES v. COLQUITT COUNTY SCHOOL DISTRICT et al.; and vice versa.

DEEN, Presiding Judge.

Over the course of several years and stages of construction, the appellee, Colquitt County School District (acting by and through the Colquitt County Board of Education), had a school complex built.

Each stage of construction followed separate plans and specifications prepared under separate contracts with the same architect, W. P. Thompson, Jr., Architect, Inc. (Thompson), and separate construction contracts. The appellant, Anderson Construction Company (Anderson), was the building contractor for two of the stages, Improvements No. 75 G-1 and No. 75 X-1.

On March 7, 1972, the appellee contracted with Thompson for the plans, inspection and approval of the construction of Improvement No. 75 G-1; subsequently, the appellee assigned the contract to the Georgia Educational Authority, which contracted with the appellant on January 2, 1975, for the actual construction of No. 75 G-1 in accordance with the plans and specifications prepared by Thompson. This addition was completed and delivered to the Georgia Educational Authority either on January 25, 1977, or March 18, 1977. (Prior to the trial, the Georgia Educational Authority assigned its rights to the contract back to the appellee.) On January 6, 1976, the appellee contracted with Thompson for the plans for and supervision of the construction of Improvement No. 75 X-1, and on April 7, 1977, the appellee again hired the appellant as the general contractor. Portions of the roofs of both Improvements No. 75 G-1 and No. 75 X-1, which had a common design, eventually failed.

Both construction contracts entered into by the appellant incorporated by reference certain "contract documents," including the general conditions of the contract, the specifications, the drawings, and the signed proposal form. Section 3C of the specifications for both projects required submission of five copies of detail shop drawings of "layout of deck on joists, details of fastening, details of end support on joist showing manufacturer's recommended minimum bearing and dimensional layout of horizontal support shelf angles." Article E-5 of both sets of specifications defined shop drawings as "drawings, schedules, data, catalogue cuts, manufacturers' published recommendations, charts, bulletins, brochures, illustrations, circulars, roughing drawings or formulae distributed by contractors, subcontractors, manufacturers, materialmen, or suppliers for use in installing work."

Although there were some preceding, minor leaks, the major defect in the roof of No. 75 G-1 did not become apparent until June 30, 1978, when leaks developed and led to the discovery that the roof had broken free and slid towards the ground, leaving a gap between the two sections of roof. Permanent repair of the roof cost was $34,249.87. The roof of Improvement No. 75 X-1 later similarly failed, and temporary repair was done for approximately $350; permanent repair was estimated at $100,000.

The appellee commenced this action against the appellant, alleging breach of the construction contracts and seeking to recover the $134,249.87 for repairs to the roof. Anderson counterclaimed for pay-

ment allegedly still owed under the construction contract, and the trial court directed a verdict for Anderson on this matter. Following the trial, the jury returned a verdict for the appellee for $67,124.93.

In Appeal No. 67906, Anderson contends that the trial court erred in allowing into evidence testimony, as well as the actual manufacturer's brochures, about the roofing material used, and that the verdict was contrary to the evidence and the law. In Appeal No. 67907, the Colquitt County School District contends that the trial court erred in awarding interest on Anderson's counterclaim. *Held*:

1. The trial court admitted into evidence, over objection by the appellant, two brochures published (in 1972 and 1981) by the manufacturer of the decking material used on the roofs of both improvements. Although the brochures obviously contain elements of an informational sales circular, they also provide some technical engineering, design, and subpurlin data and illustrations concerning installation. The illustrations in each brochure clearly indicate the use of eave angle iron as support for the deck. (The roof design, as prepared by the architect, however, did not utilize eave angle iron.)

Because the appellant was required to submit precisely this type of material to the architect for the latter's benefit in designing the building, certainly the 1972 brochure was relevant at trial, where the appellee alleged that the appellant breached the construction contracts in part by failing to submit these brochures. The 1981 brochure, however, was irrelevant, it obviously having been printed years after the execution of and performance under the two construction contracts. Nevertheless, the admission of the later brochure certainly did not constitute any harmful error because in all essential elements it was identical to the admissible 1972 brochure. See *Classic Restorations v. Bean*, 155 Ga. App. 694 (272 SE2d 557) (1980); *Tucker v. Mappin*, 149 Ga. App. 847 (256 SE2d 135) (1979).

2. With regard to the defective roof of Improvement no. 75 G-1, one expert witness testified that the leaks developed as a result of the appellant's failure to install the deck panels tightly together. (There was also testimony that the type of support actually utilized, 2″ x 6″ boards, had not been sufficiently bolted together.) The appellant acknowledges that the testimony about the roof of No. 75 G-1 was sufficient to support the jury's verdict for all or any part of the $34,249.87 repair cost for that roof. However, the appellant contends that the verdict for $67,124.93 was improper because there was no evidence of faulty installation of the roof on Improvement No. 75 X-1, and that the appellant could not be held liable for any faulty design of that roof.

The contention ignores one essential aspect of the appellee's case, i.e., that the breach of the construction contracts occurred in the appellant's failure to submit the manufacturer's brochures to the archi-

tect, which in part resulted in the faulty roof design (no eave angle iron). The jury thus had to weigh the appellant's contractual obligation of submitting the manufacturer's brochure to the architect against the architect's general responsibility for proper design in determining the liability for the damages to the roof; it obviously concluded that the appellant breached its contractual obligation but that the breach did not constitute the sole cause of the damaged roof or that the damages were not as great as asserted.

"Questions of value are particularly for the jury, who are not bound even by uncontradicted evidence, but may, when the facts appear upon which the opinion is based, exercise their own knowledge and judgment in the light of their own experience." *Dalon Contracting Co. v. Artman*, 101 Ga. App. 828, 833 (115 SE2d 377) (1960). On appeal, this court must construe the evidence more strongly in support of the verdict. *White v. Olderman Realty &c. Co.*, 166 Ga. App. 179 (2) (303 SE2d 517) (1983); *Fritts v. Mid-Coast Trading Corp.*, 166 Ga. App. 31 (1) (303 SE2d 148) (1983). As indicated above, there was evidence showing both that the appellant negligently installed some of the roof decking (and the 2″ x 6″ board supports) and that the appellant failed to submit the manufacturer's brochures as required by the construction contracts, and the jury's award certainly fell within the allowable range; accordingly, we will not here disturb that verdict.

3. In its cross-appeal, the Colquitt County School District contends that the trial court erred in awarding prejudgment interest on Anderson's counterclaim. Anderson had counterclaimed for $20,514.79 as the unpaid balance due on the construction contract for the No. 75 X-1 project, but at trial in moving for directed verdict on the counterclaim asserted that a sum of $23,898.42, which included prejudgment interest was due. The record indicates that counsel for the cross-appellant did not dispute that figure, but rather was concerned with the manner of setoff to be effected.

"Damages by way of interest are, as a general rule, allowable in actions on building and construction contracts. The amount on which interest is to be computed in assessing damages for failure to make specified payments under a building contract is the balance remaining after deducting the sum to which the owner is entitled on account of defects in the work." 13 AmJur2d, Building & Constr. Contracts, § 83. This mechanism of setoff apparently follows the English common law rule which was approved by Justice Lumpkin in *Meriwether v. Bird*, 9 Ga. 594 (1851).

It thus appears that the trial court should have directed verdict on the counterclaim only for the actual balance due on the construction contract, i.e., $20,514.79, rather than the amount asserted at trial. However, counsel for the cross appellant did not object to the latter

sum during the trial proceedings, and this court may not now consider this error on appeal. *Maner v. Robinson,* 166 Ga. App. 514 (304 SE2d 569) (1983); *Capitol City Roofing v. Wentz,* 165 Ga. App. 699 (300 SE2d 322) (1983).

*Judgment affirmed in both appeals. McMurray, C. J., and Sognier, J., concur.*

DECIDED MARCH 13, 1984.

*Bruce W. Kirbo,* for appellant.
*James C. Whelchel,* for appellees.