**FOURTH DIVISION**
**MILLER, J.,**
**DILLARD and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 19, 2014**

# In the Court of Appeals of Georgia

A14A0926. SOVEREIGN HEALTHCARE, LLC et al. v.
    MARINER HEALTH CARE MANAGEMENT COMPANY.

BRANCH, Judge.

This case is before us for the second time. The first time, we ruled that three of the four appellant healthcare companies were liable to Mariner Health Care Management Company ("Mariner") for prematurely terminating an administrative services contract, and that the contract's liquidated damages provision was enforceable. *Mariner Health Care Management Co. v. Sovereign Healthcare, LLC*, 306 Ga. App. 873 (703 SE2d 687) (2010) ("*Mariner I*"). This time, the appellants challenge the trial court's judgment that all signatories to the contract must pay liquidated damages, instead of just the one signatory specifically mentioned in the liquidated damages clause. They also protest the trial court's award of prejudgment

interest and its ruling that Mariner is entitled to attorneys' fees. For reasons that follow, we reverse in part the court's liquidated damages judgment, but affirm the remainder.

Although many of the relevant facts were set out in *Mariner I*, a fuller account is needed here. In October 2003, Mariner entered into an administrative services agreement ("ASA") with three related entities – Sovereign Healthcare, LLC ("Sovereign"), Sovereign Healthcare Holdings, LLC ("Holdings"), and Southern Healthcare Management, LLC ("Southern"). Holdings was the sole member of Sovereign, which in turn was the sole member of 19 limited liability companies that operated nursing homes in Florida. Southern provided management services to those 19 companies.

Under the ASA, Mariner agreed to provide Sovereign with a wide variety of administrative services, including accounting, accounts receivable, information technology, payroll, and benefits. Mariner also agreed to provide Holdings and Southern with more limited administrative services. The ASA provided that Sovereign would pay Mariner a monthly fee for the services rendered to all three entities, and Holdings guaranteed payment of that fee. The term of the ASA was five years, and it included the following liquidated damages provision:

In the event Sovereign terminates this Agreement prior to the expiration of the [five-year] Term for any reason whatsoever, . . . Sovereign shall pay [Mariner], in a lump sum, as liquidated damages, an early termination fee equivalent to fifty percent (50%) of the total Fee that would have been paid to [Mariner] through the expiration of the [five-year] Term (**"Note Repayment Early Termination Fee"**).

(Emphasis in original.) The ASA also contained an attorney fees provision:

In the event any proceeding or suit is brought to enforce this Agreement, the prevailing party shall be entitled to all reasonable costs and expenses (including reasonable attorneys' fees) actually incurred by such party in connection with any action, suit or proceeding to enforce the other's obligations under this Agreement.

In November 2003, Mariner entered into six separate administrative services agreements that the parties refer to as the "Kellett ASAs." Under these agreements, Mariner agreed to provide administrative services to Southern Healthcare Management II, LLC ("Southern II"), which was managing six Florida nursing homes that belonged to an unrelated entity. The Kellett ASAs contain terms that are materially identical to those of the ASA, including similar liquidated damages and attorney fees provisions.

In 2005, Sovereign, Holdings, and Southern sued Mariner, claiming that it had breached an oral agreement to terminate the ASA early and had breached the ASA itself by mishandling data. Mariner filed an answer and counterclaim alleging that the plaintiffs – not Mariner – had wrongly terminated the ASA. On cross-motions for partial summary judgment, the trial court ruled that Sovereign, Southern, and Holdings were liable to Mariner for preemptively terminating the ASA. The court further ruled, however, that the ASA's liquidated damages provision was an unenforceable penalty and that actual damages should be determined by a trier of fact.

The parties cross-appealed to this Court. We affirmed the trial court's ruling that Sovereign, Holdings, and Southern were liable to Mariner for early termination of the ASA. *Mariner I*, 306 Ga. App. at 877-878 (4). But we reversed the trial court's liquidated damages ruling, holding that the ASA's liquidated damages provision was enforceable as a matter of law. Id. at 874-876 (1).

Meanwhile, with the trial court's permission, Mariner had added Southern II as a counterclaim defendant, alleging that it had breached the Kellett ASAs. After the remittitur from *Mariner I* issued, Mariner moved for the entry of judgment, seeking liquidated damages from all counterclaim defendants on its claims for breach of the ASA and the Kellett ASAs. The trial court granted Mariner's motion. For breach

4

of the ASA, the court entered judgment against Sovereign, Holdings, and Southern in the amount of $8,137,559.16 in liquidated damages, as well as $3,968,682.09 in prejudgment interest. And for breach of the Kellett ASAs, the court entered judgment against Southern II in the amount of $4,158,040.61 in liquidated damages, plus $2,027,870.71 in prejudgment interest. Additionally, the court ruled that Mariner is entitled to recover attorney fees under the terms of the ASA and Kellett ASAs, but it reserved the issue of the amount of such fees for later determination. It also reserved ruling on Sovereign, Holdings, and Southern's two remaining breach of contract claims and claim for attorneys' fees. Despite these unresolved issues, the court made its judgment final pursuant to OCGA § 9-11-54 (b). Sovereign, Holdings, Southern, and Southern II then filed this timely appeal.

1. Sovereign, Holdings, and Southern (collectively, for this division only, "the original Sovereign parties") contend that the trial court erred by making all three entities liable for liquidated damages under the ASA even though the ASA imposes that obligation only upon Sovereign. The original Sovereign parties cite the black-letter legal principle that if contractual language is unambiguous, "the court simply enforces the contract according to the terms and looks to the contract alone for the meaning." *RLI Ins. Co. v. Highlands on Ponce, LLC*, 280 Ga. App. 798, 800 (1) (635

5

SE2d 168) (2006) (citation omitted). The ASA plainly states that if Sovereign prematurely terminates the agreement, "Sovereign shall pay . . . liquidated damages." Mariner does not dispute that this language does indeed obligate Sovereign, alone, to pay liquidated damages in the event of Sovereign's early termination. Nonetheless, Mariner contends that all three original Sovereign parties are liable for liquidated damages for two reasons.

(a) First, Mariner asserts that we previously decided this issue against the original Sovereign parties in *Mariner I*, and that ruling is the law of the case. Under the law-of-the-case doctrine, a ruling by this Court "in a case shall be binding in all subsequent proceedings in that case." OCGA § 9-11-60 (h). But the doctrine applies only "to actual decisions, not to issues raised but never ruled upon." *Shadix v. Carroll County*, 274 Ga. 560, 563 (1) (554 SE2d 465) (2001) (punctuation and footnote omitted). In *Mariner I*, we held that the original Sovereign parties were liable for prematurely terminating the ASA and that the liquidated damages clause was enforceable. We did not attempt to calculate the amount of liquidated damages or determine which entity or entities – Sovereign, Holdings, Southern, or some combination – was responsible for paying them. *Mariner I*, 306 Ga. App. at 875-876 (1). Thus, we did not decide the issue presented here. Accordingly, the law-of-the-

6

case rule does not foreclose us from addressing it now. See *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814 (520 SE2d 494) (1999) (law-of-the-case rule "applies only to actual *decisions*, not to issues raised by the parties but never ruled upon"); see also *Currid v. Dekalb State Court Probation Dept.*, 285 Ga. 184, 186, n.5 (674 SE2d 894) (2009) (rule does not extend to an "implied ruling" on an issue that "simply was not addressed") (citation and punctuation omitted).

(b) Second, Mariner argues that Holdings guaranteed Sovereign's obligations under the ASA.[1] Mariner relies on the "Fees" provision of the ASA, which states that "Sovereign is obligated to pay, and Holdings guarantees the payment of, the fees to be paid to [Mariner] for all Administrative Support Services rendered under this Agreement (the **"Fee"**) which shall be a monthly fee equal to Four Hundred Ten Thousand Dollars ($410,000.00)." As before, we must enforce unambiguous contractual terms as they are written. *RLI Ins. Co.*, 280 Ga. App. at 800 (1). And "a court must strictly construe an alleged guaranty contract in favor of the guarantor. The guarantor's liability may not be extended by implication or interpretation."

---

[1] Mariner does not argue that Southern guaranteed Sovereign's obligations.

7

*Community Magazine, LLC v. Color Xpress*, 326 Ga. App. 330, 332 (1) (756 SE2d 564) (2014).

The ASA's guaranty provision provides that Holdings guarantees Sovereign's payment of monthly fees to Mariner. Mariner contends that the provision also means that Holdings guarantees payment of liquidated damages. But the guaranty provision says nothing about liquidated damages, which are mentioned in a different section of the ASA that does not contain a guaranty. Obligating Holdings to cover Sovereign's liquidated damages liability would require us to extend the ASA's limited guaranty provision to encompass a separately defined fee – the "Note Repayment Early Termination Fee" referenced elsewhere in the agreement. Strictly construing the limited guaranty, however, we decline to extend the express terms thereof to include the liquidated damages provision.[2] In sum, the trial court erred by entering judgment for liquidated damages against Holdings and Southern.

2.      Sovereign and Southern II argue that Mariner is not entitled to prejudgment interest on the liquidated damages amounts and that, even if such an

---

[2] Mariner claims that the "Note Repayment Early Termination Fee" is really just a subset of the "Fee" that Holdings guaranteed, but the ASA does not define it as such. Reaching Mariner's conclusion would require us to imply contractual terms that are not there.

8

entitlement existed, the trial court improperly calculated the interest.[3] These arguments lack merit.

(a) Sovereign and Southern II insist that Mariner's liquidated damages award represents "the maximum as well as the minimum sum" – that is, the *only* sum – that Mariner may collect from them. *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 231 (227 SE2d 340) (1976) (punctuation omitted). OCGA § 7-4-15, however, plainly provides that "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed and certain, bear interest from the time the party shall become liable and bound to pay them." Such interest is mandatory and is awarded as a matter of law. *Crisler v. Haugabook*, 307 Ga. App. 796, 797 (706 SE2d 184) (2011).

Sovereign and Southern II contend that this statute applies only to liquidated demands, which it claims arise when contractual work is "completed and its cost becomes fixed" or where a debt's underlying value is not disputed,[4] but not to

---

[3] Holdings and Southern join in this argument, but in light of our conclusion in Division 1 that those parties are not liable for liquidated damages, we omit reference to them in this division.

[4] Sovereign and Southern II cite to *Swanson v. Chase*, 107 Ga. App. 295 (129 SE2d 873) (1963) and *Hendricks v. Blake & Pendleton*, 221 Ga. App. 651 (472 SE2d 482) (1996) in order to distinguish between a "liquidated demand" and "liquidated damages." Those cases, however, do not embrace such a distinction.

9

contractual liquidated damages clauses. The statute, however, recognizes that a debt may become "fixed or certain" by "agreement," i.e., through the execution of a reasonable, bargained-for liquidated damages provision. See *Holloway v. State Farm Fire & Cas. Co.*, 245 Ga. App. 319, 321 (1) (b) (537 SE2d 121) (2000) (statutory prejudgment interest available when a debt is "settled, acknowledged, *or agreed*") (punctuation and footnote omitted; emphasis supplied). Based upon OCGA § 7-4-15's plain language, Mariner is entitled to prejudgment interest. See *Maz Medics v. Satellite Advertising Systems*, 194 Ga. App. 583, 584 (2) (391 SE2d 446) (1990) (affirming award of prejudgment interest on judgment entered pursuant to liquidated damages clause in contract).[5]

---

[5] Sovereign and Southern II note, accurately, that a non-breaching party who elects liquidated damages may not also recover actual damages. See *Sweatt v. Intl. Dev. Corp.*, 242 Ga. App. 753, 756 (1) (531 SE2d 192) (2000). Sovereign and Southern II then define prejudgment interest as a type of "actual damages" incompatible with the recovery of liquidated damages. As an initial matter, this argument conflicts with the plain language of OCGA § 7-4-15. Further, the cases upon which Sovereign and Southern II rely either do not apply in this context, see *Monessen Southwestern R. Co. v. Morgan*, 486 U. S. 330, 335 (II) (A) (108 SCt 1837, 100 LE2d 349) (1988) (addressing the proper measure of damages for Federal Employers' Liability Act claims), or merely state dicta. See *Jefferson Randolph Corp. v. Progressive Data Systems*, 251 Ga. App. 1, 4 (1) (a) (553 SE2d 304) (2001) (liquidated damages clause was unenforceable penalty, but court noted that if liquidated damages had been available, parties "cannot elect between liquidated and actual damages; prejudgment interest would be actual damages") (citations omitted), *rev'd on other grounds*, *Progressive Data Systems v. Jefferson Randolph Corp.*, 275 Ga. 420 (568 SE2d 474) (2002).

(b) Sovereign and Southern II argue that the trial court erred by using the statutory interest rate to calculate prejudgment interest, rather than the lower rate established in the ASA for the payment of late administrative fees. In its motion for entry of judgment, Mariner sought prejudgment interest at the statutory rate of seven percent. See OCGA § 7-4-2 (a) (1) (A).[6] In their response to Mariner's motion, Sovereign and Southern II objected to an award of prejudgment interest on a number of grounds, but did *not* challenge the applicability of the statutory rate or alert the trial court to the different rate set forth in the ASA. By failing to object to the use of the statutory rate in the trial court, Sovereign and Southern II have waived this argument on appeal. See *Anderson Constr. Co. of Fort Gaines v. Colquitt County School Dis.*, 170 Ga. App. 270, 273-274 (3) (316 SE2d 851) (1984) (challenge to award of

---

[6] OCGA § 7-4-2 (a) (1) (A) provides as follows:

> The legal rate of interest shall be 7 percent per annum simple interest where the rate percent is not established by written contract. Notwithstanding the provisions of other laws to the contrary, except Code Section 7-4-18, the parties may establish by written contract any rate of interest, expressed in simple interest terms as of the date of the evidence of the indebtedness, and charges and any manner of repayment, prepayment, or, subject to the provisions of paragraph (1) of subsection (b) of this Code section, acceleration, where the principal amount involved is more than $3,000.00 but less than $250,000.00 or where the lender or creditor has committed to lend, advance, or forbear with respect to any loan, advance, or forbearance to enforce the collection of more than $3,000.00 but less than $250,000.00.

prejudgment interest waived where counsel failed to object below to damages amount that included prejudgment interest).[7]

3. All four Sovereign entities (collectively, for this division only, "Sovereign") claim that the trial court erred by holding that Mariner is entitled to recover attorney fees, in an amount to be determined later, under the ASA and Kellett ASAs. Sovereign makes three arguments in this regard, none of which is persuasive.

Sovereign first argues, as it did with prejudgment interest, that the award of liquidated damages establishes Mariner's maximum recovery and therefore precludes attorney fees. This argument lacks merit, as the ASA and Kellett ASAs specifically provide both for liquidated damages *and* for attorney fees.

Next, Sovereign contends that Mariner failed to comply with OCGA § 13-1-11 (a), which applies to "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness." Specifically, Sovereign charges that Mariner did not provide it with written notice of its attorney fees claim and ten days' opportunity to

_____

[7] Sovereign and Southern II cite *Swainsboro Cabinet Co. v. Ed Johns Constr. Co.*, 299 Ga. App. 462 (682 SE2d 599) (2009), and *Bevington v. Cavalry Portfolio Svcs., LLC*, 319 Ga. App. 746 (738 SE2d 329) (2013), for the proposition that objections to prejudgment interest may not be waived, but those cases are distinguishable. In *Swainsboro Cabinet Co.*, the objecting party had no opportunity to raise the issue below, 299 Ga. App. at 464 (2), n. 2; and *Bevington* did not address the issue of waiver at all. 319 Ga. App. at 748-749 (4). *Anderson Constr. Co.*, 170 Ga. App. at 273-274 (3), by contrast, is directly on point.

pay the underlying debt without the attorney fees. See OCGA § 13-1-11 (a) (3). Mariner does not dispute the lack of notice, but points out – correctly – that the statute does not apply to "personal services contract[s]" because they do not qualify as "note[s] or other evidence of indebtedness." *Vaughters v. Outlaw*, 293 Ga. App. 620, 623 (2) (668 SE2d 13) (2008) (citations, punctuation and footnotes omitted) (OCGA § 13-1-11 did not apply to contract for legal representation); see also *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162, 166 (4) (332 SE2d 920) (1985) (statute inapplicable to exclusive real estate listing agreement). Because the ASA and Kellett ASAs were agreements to perform accounting and other administrative services, Mariner was "under no duty to notify [Sovereign] of its intention to seek attorney fees under the contract[s]." *O'Brien's Irish Pub*, 175 Ga. App. at 166 (4).[8]

Finally, Sovereign argues that the trial court erred by declaring Mariner to be the "prevailing party" within the meaning of the agreements' attorney fees provisions

---

[8] Sovereign cites *Best v. C B Decatur Court, LLC*, 324 Ga. App. 403 (750 SE2d 716) (2013), in which we noted that the OCGA § 13-1-11 "should be construed broadly." Id. at 408 (2) (a). But there, we simply followed Supreme Court precedent holding that leases count as "other evidence of indebtedness" within the meaning of the statute, see *Radioshack Corp. v. Cascade Crossing II, LLC*, 282 Ga. 841, 842 (653 SE2d 680) (2007); we did not purport to overrule precedent holding that the statute does not encompass service contracts.

because Sovereign has two breach of contract claims, as well as its own claim for attorney fees, still pending against Mariner. Sovereign argues that these pending claims "could alter the balance of who ultimately prevails." We need not reach this issue. Because the trial court has reserved determination of the amount of attorney fees to be awarded, its decision on this issue is not final and may be revised as necessary once all outstanding claims have been adjudicated.

*Judgment affirmed in part and reversed in part. Miller and Dillard, JJ., concur.*