**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 20, 2025**

# In the Court of Appeals of Georgia

A25A0702. MARINER HEALTH CARE MANAGEMENT CO. v. SOVEREIGN HEALTHCARE HOLDINGS, LLC et al.

MCFADDEN, Presiding Judge.

After a decade of litigation over cross-allegations of breach of contract, the trial court entered a $12.1 million judgment in favor of appellant Mariner Healthcare Management Company and against Sovereign Healthcare, LLC ("Sovereign"). Mariner filed the instant action to collect the judgment. It did not sue Sovereign, however. Rather, it sued Sovereign's holding company, Sovereign Healthcare Holdings, LLC, ("Holdings"), and two executives with ownership interests in Holdings, John Notermann[1] and Royce Cronquist (collectively, "the defendants").

---

[1] Notermann died during the pendency of this action, and his estate was substituted as a defendant.

Mariner seeks to collect the Sovereign judgment from the defendants because Sovereign is insolvent, having transferred its assets to Holdings in 2005 — allegedly in anticipation of the breach-of-contract litigation and the risk of a judgment requiring it to pay liquidated damages.

Mariner alleged that all three defendants are liable for the judgment on the grounds that, because of the transfer of assets, Sovereign is their alter ego and Holdings is liable as Sovereign's successor. The trial court granted the defendants' motion for summary judgment, and Mariner filed this appeal.

We hold that Mariner's action is barred by the running of the statute of limitation. We reject Mariner's contention that OCGA § 9-12-60, which concerns dormancy of judgments, establishes a seven-year statute of limitation. Because Mariner's claims are equitable, we look to the gravamen of the cause of action to determine the statute of limitation. The gravamen of Mariner's cause of action is fraud, in particular that the 2005 assignment of assets from Sovereign to Holdings was a fraudulent transfer. So we conclude that the applicable statute of limitation is the four-year statute of limitation for fraud. The statute of limitation began to run when the claim accrued, upon the 2005 assignment of assets. The limitation period was not

tolled; Mariner has not rebutted testimony that it had knowledge of Sovereign's finances, transactions, management, and corporate structure generally and that it had knowledge of the transfer of assets no later than 2006.

So we affirm.[2] We do not reach Mariner's other enumerations of error.

1. *Factual and procedural background*

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*eCBI Warner v. Patrick*, 370 Ga. App. 1, 1 (893 SE2d 765) (2023).

So viewed, the record shows that this is the third appeal stemming from the contractual dispute. See *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare*, 306 Ga. App. 873 (703 SE2d 687) (2010) ("*Mariner I*"); *Sovereign Healthcare v. Mariner Health Care Mgmt. Co.*, 329 Ga. App. 782 (766 SE2d 172) (2014) ("*Mariner II*"). In

---

[2] Oral argument was held in this case on April 10, 2025, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A25A0702 (April 10, 2025), available at https://vimeo.com/1075661711.

*Mariner II*, 329 Ga. App. at 782, we described the facts and procedural history as follows.

> In October 2003, Mariner entered into an administrative services agreement . . . with three related entities — [judgment debtor] Sovereign . . ., [defendant] Holdings,. . . and Southern Healthcare Management, LLC ("Southern"). Holdings was the sole member of Sovereign, which in turn was the sole member of 19 limited liability companies that operated nursing homes in Florida. . . . The term of the [administrative services agreement] was five years, and it included [a] liquidated damages provision. . . .

*Mariner II*, 329 Ga. App. at 783.

On July 29, 2005, about five months before the litigation began, Sovereign transferred ownership of its assets — the limited liability companies that operated the nursing homes — to Holdings. Then, on December 22, 2005,

> Sovereign, Holdings, and Southern sued Mariner, claiming that it had breached an oral agreement to terminate the [administrative services agreement] early and had breached the [administrative services agreement] itself by mishandling data. Mariner filed an answer and counterclaim alleging that [Sovereign, Holdings, and Southern] — not Mariner — had wrongly terminated the [administrative services agreement]. On cross-motions for partial summary judgment, the trial court ruled that Sovereign, Southern, and Holdings were liable to

4

Mariner for preemptively terminating the [administrative services agreement].

*Mariner II*, 329 Ga. App. at 784. But the trial court held that the liquidated damages provision was an unenforceable penalty and that a trier of fact should determine actual damages. Id. The parties cross-appealed to this court.

In that appeal, the first, we affirmed the trial court's ruling "that Sovereign, Holdings, and Southern were liable to Mariner for early termination of the [administrative services agreement]. But we reversed the trial court's liquidated damages ruling, holding that the [agreement's] liquidated damages provision was enforceable as a matter of law." *Mariner II*, 329 Ga. App. at 784 (citation and punctuation omitted). After that remittitur issued, the trial court entered judgment, including liquidated damages, against Sovereign, Holdings, and Southern, and they appealed. *Mariner II*, 329 Ga. at 784-785.

In *Mariner II*, we held that only Sovereign was liable for liquidated damages, because it was the only signatory specifically mentioned in the liquidated damages clause of the administrative services agreement. *Mariner II*, 329 Ga. App. at 785-786

5

(1). Upon remittitur, at Mariner's request, on December 23, 2015, the trial court entered judgment in Mariner's favor for more than $12.1 million in liquidated damages and prejudgment interest against Sovereign.[3]

About a year later, on December 30, 2016, Mariner filed this action. It characterized its complaint as "an action pursuant to OCGA §§ 9-11-69[, which concerns the execution of judgments and post-judgment discovery,] and 9-12-60[, which concerns the dormancy of judgments,] seeking to enforce" its judgment against Sovereign. It alleged that the defendants were liable for the judgment against Sovereign because Sovereign is "a mere alter ego, conduit and instrumentality of the [d]efendants." It alleged that Holdings was alternatively liable because, as Sovereign's successor, it assumed all of Sovereign's liabilities under the administrative services agreement.

---

[3] The court also entered judgment in favor of Mariner for liquidated damages and prejudgment interest against a related entity, which is not a party to the instant action, for breach of a different contract. Additionally, the court reserved ruling on several of Sovereign's claims against Mariner as well as the amount of attorney fees to which Mariner was entitled. The resolution of the reserved issues is unclear.

The parties filed cross-motions for summary judgment. The trial court denied Mariner's partial motion for summary judgment and granted the defendants' motion for summary judgment. Mariner filed this appeal.

2. *Statute of limitation*

Mariner argues that the trial court erred by granting summary judgment on the ground that the complaint is barred by the running of the statute of limitation. We hold that the trial court did not err.

(a) *OCGA § 9-12-60 does not establish the applicable statute of limitation*

"In determining whether the statute of limitation provides a bar to this action the court must [identify the applicable statute of limitation and] decide when the statutory period began to run." *Godwin v. Mizpah Farms*, 330 Ga. App. 31, 35 (3) (766 SE2d 497) (2014) (citation and punctuation omitted).

Mariner argues that because this is an action to enforce a judgment, the seven-year statute of limitation of OCGA § 9-12-60 applies. We disagree. That statute concerns dormancy of judgments and imposes a seven-year deadline to take certain actions in order to prevent a judgment from becoming dormant and unenforceable. Specifically, the statute provides:

A judgment shall become dormant and shall not be enforced:

(1) When seven years shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county in which the judgment was rendered;

(2) Unless entry is made on the execution by an officer authorized to levy and return the same and the entry and the date thereof are entered by the clerk on the general execution docket within seven years after issuance of the execution and its record; or

(3) Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made and due written notice of such effort specifying the time of the institution of the action or proceedings, the nature thereof, the names of the parties thereto, and the name of the court in which it is pending is filed by the plaintiff in execution or his attorney at law with the clerk and is entered by the clerk on the general execution docket, all at such times and periods that seven years will not elapse between such entries of such notices or between such an entry and a proper entry made as prescribed in paragraph (2) of this subsection.

OCGA § 9-12-60 (a). Each of these measures concerns attempting to execute the judgment rendered and making entries of such attempts on the general execution docket in order to renew the judgment. Id. See generally *Cronic v. Chambers Lumber*

*Co.*, 249 Ga. 722, 722-723 (1) (292 SE2d 852) (1982). Mariner's action is not an action to *renew* the judgment. Further, under OCGA § 9-13-3, "[e]very execution shall follow the judgment upon which it issued and shall describe the parties thereto as described in the judgment." Reading the two statutes together, it is clear that OCGA § 9-12-60 concerns the judgment rendered and the parties to that judgment: the judgment creditor and the judgment debtor. This action, however, was filed against an entity and individuals who were not parties to the judgment.

We have found no Georgia case under which a judgment creditor has been allowed to pursue an action under OCGA § 9-12-60 against anyone but the judgment debtor or his estate. In *Pazur v. Belcher*, 272 Ga. App. 456, 457 (1) (612 SE2d 481) (2004), the plaintiff raised such a theory, but we did not decide whether it was permissible. In that case, we rejected the plaintiff's argument that the seven-year limitation period of OCGA § 9-12-60 applied to a claim that he characterized as "in the nature of an action to enforce a judgment based on piercing the corporate veil." Id. We held that the statute was inapplicable because the plaintiff was seeking to add an individual as a party to his lawsuit against a corporation before judgment had been entered. Id. at 457-458 (1). We did not decide whether OCGA § 9-12-60 itself, with

9

its seven-year statute of limitation, provided a basis for a subsequent, separate action against a non-party to any judgment. Id.

We do not find the cases from other jurisdictions that Mariner cites to be persuasive, because they all rely on statutes that expressly establish statutes of limitation for actions on judgments. See *Supreme Fuels Trading FZE v. Sargeant*, No. 23-80633-CIV-ALTONAGA/Maynard (III) (C), 2023 U.S. Dist. LEXIS 166729 (Sept. 19, 2023) (relying on Fla. Stat. Ann. § 95.11 (2) (a), which expressly provides a five-year statute of limitation for "[a]n action on a judgment"); *Oceanics Schools v. Barbour*, 112 S.W.3d 135, 145-146 (V) (Tenn. Ct. App. 2003), (relying on Tenn. Code Ann. § 28-3-110 (a) (2), which expressly provides a 10-year statute of limitation for "[a]ctions on judgments"); *Backus v. Watson*, 619 So. 2d 1342 (Ala. 1993) (relying on Ala. Code § 6-2-32 which expressly provides a 20-year statute of limitation for "actions upon a judgment"); *Belleville v. Hanby*, 394 NW2d 412 (Mich. Ct. App. 1986) (relying on Mich. Comp. Laws Serv. § 600.5809 (3), which expressly provides a 10-year statute of limitation for "an action founded upon a judgment"). Cf. *Specialty Cos. Group v. Meritage Homes of Ariz.*, 492 P3d 308 (Ariz. 2021) (declining to apply 10-year period from statute relating to renewal of judgments as the statute of limitation

10

in action to recover from defendant under an alter ego theory and instead applying statute of limitation for breach of contract, the cause of action from which the alter ego claim derived).

Contrary to Mariner's argument, this is not an action to enforce a judgment to which the seven-year statute of limitation of OCGA § 9-12-60 applies. Instead, as detailed below, we hold, that it is an equitable action that is governed by a four-year statute of limitation.

(b) *Mariner's claims are equitable so we look to the gravamen of the cause of action to determine the statute of limitation*

Mariner acknowledges that while it "cited OCGA §§ 9-11-69 and 9-12-60 in its complaint its action is to enforce a judgment through a piercing the corporate veil theory." It alleges liability based on the theories of the alter ego doctrine and successor liability. The alter ego doctrine is a form of piercing the corporate veil, see generally *TMX Financial v. Goldsmith*, 352 Ga. App. 190, 209-210 (6) (833 SE2d 317) (2019), and the successor liability theory is related in that it also seeks to disregard the corporate form. Both theories "are attempts to hold a business entity or individual responsible for the liabilities of a different entity by showing that the two — for

11

example, predecessor and successor, corporation and owner, parent and subsidiary — are, in actuality, the same." *Giron v. Zeytuna, Inc.*, 597 FSupp3d 29, 41 n.6 (III) (A) (1) (a) (D.D.C. 2022).

Alter ego and successor liability theories are means of imposing liability; neither is a cause of action in and of itself. See *Peacock v. Thomas*, 516 U.S. 349, 354 (II) (116 SCt 862, 133 LE2d 817) (1996) ("Piercing the corporate veil is not itself an independent . . . cause of action, but rather is a means of imposing liability on an underlying cause of action.") (citation and punctuation omitted); *In re 305 E. 61st St. Group*, 130 F4th 272, 284 n.5 (II) (2d Cir. 2025) ("alter ego liability is not itself an independent cause of action, but rather is a means of imposing liability on an underlying cause of action") (citation, punctuation, and emphasis omitted); *Giron*, 597 FSupp3d at 44 (III) (A) (1) (a) (iii) ("courts generally find that neither alter ego or successor liability nor piercing the corporate veil is a 'claim' in the sense of a cause of action; rather, each is a theory of liability that can be raised in connection with an underlying cause of action"); see also *Deschepper v. Midwest Wine & Spirits*, 84 FSupp3d 767, 780 (III) (B) (1) May 26, 2025 (N.D. Ill. 2015) ("Although the plaintiffs styled successor liability as a claim, it is, in fact, a theory of liability."); *Tindall v. H*

*& S Homes*, No. 5:10-CV-044(CAR), 2012 U.S. Dist. LEXIS 13587, at *6 (M.D. Ga. Feb. 3, 2012) ("the theory of successor liability merely provides a plaintiff an alternative entity from whom to recover; it does not create a new cause of action against the successor which is independent of the underlying tort") (citation and punctuation omitted), vacated on other grounds by *Tindall v. H&S Homes*, No. 5:10-CV-044(CAR), 2012 U.S. Dist. LEXIS 66800 (M.D. Ga. May 14, 2012). Accordingly, neither theory has its own statute of limitation in Georgia law.

However, both the alter ego doctrine and the corporate continuity doctrine, from which successor liability is derived, are equitable in nature. *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 290 (1) (612 SE2d 296) (2005); *Dan J. Sheehan Co. v. Fairlawn on Jones Condo. Assoc.*, 334 Ga. App. 595, 597 (1) (780 SE2d 35) (2015). See also *Pantusco v. Wiley*, 274 Ga. App. 144, 146 (1) (616 SE2d 901) (2005) ("[t]he concept of piercing the corporate veil is based upon equitable principles").

So the appropriate statute of limitation is determined by the gravamen of the cause of action. *Hays v. Urquhart*, 63 Ga. 323, 325 (1879) (holding that gravamen of equitable claim was a tort, so the claim was barred by the tort statute of limitation); *Tidwell v. Tidwell*, 251 Ga. App. 863, 864 (554 SE2d 822) (2001) (holding that

13

gravamen of equitable claim was conversion, and thus barred by the statute of limitation applicable to conversion claims).

(c) *The gravamen of Mariner's cause of action is fraud*

Looking at the allegations of the complaint, including the injury alleged and the conduct giving rise to the claim, *Godwin*, 330 Ga. App. at 38 (3) (b) & 44 (3) (e), we conclude that the gravamen of Mariner's cause of action is fraud, specifically the allegedly fraudulent transfer of assets from Sovereign to Holdings, rendering Sovereign insolvent, for the purpose of avoiding potential contractual liability for liquidated damages.

In the count seeking to impose liability under an alter ego theory, Mariner alleged that Sovereign's transfer of its assets to Holdings made Sovereign insolvent and rendered it an alter ego and business conduit for the defendants to transact their own affairs. Mariner alleged that the defendants agreed to the transfer, in anticipation of the early termination of the administrative services agreement, while knowing that the transfer would render Sovereign insolvent and therefore unable to pay the liquidated damages required under the agreement for the early termination. Mariner alleged that, "[w]ith full knowledge of the [administrative services agreement] and its

14

potential early termination, in or around July 2005, Sovereign Healthcare made the [t]ransfer to Sovereign Holdings for no consideration in an effort to avoid payment of the early termination fee[, i.e. the liquidated damages,] to Mariner should Sovereign Healthcare terminate the [agreement]." It alleged that the defendants "effectuated the [t]ransfer in order to protect Sovereign Healthcare's assets from judgment creditors such as Mariner, while maintaining control over and access to those assets[,]" and that "[t]o continue to recognize Sovereign Healthcare's status as a corporate entity distinct from Sovereign Holdings would promote injustice or protect fraud." In the successor liability count of the complaint, Mariner alleged that Holdings "assumed all or substantially all of the assets of Sovereign Healthcare to avoid liability to [Mariner,]" making Holdings Sovereign's successor, and liable to Mariner for the judgment.

Mariner hinges its entire recovery effort on the premise that the 2005 assignment of assets from Sovereign to Holdings was a fraudulent transfer and therefore an abuse of the corporate form. Indeed, in the complaint, Mariner itself characterized the 2005 transfer and the breach of the administrative services agreement as "the heart of this case." So we conclude that the applicable statute of

limitation is the four-year statute of limitation for fraud. *Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 525 (2) (878 SE2d 235) (2022). Cf. OCGA § 18-2-79 (establishing four-year and one-year statutes of limitation for causes of action under Georgia Uniform Voidable Transactions Act).

(d) *The statute of limitation began to run when the claim accrued*

The statute of limitation began to run on the date that Mariner's claim accrued, OCGA § 9-3-31, meaning when Mariner could have successfully maintained a claim based on the allegedly fraudulent transfer. *Coe*, 314 Ga. at 528 (2). Mariner could have maintained a claim based on the allegedly fraudulent transfer, and asserted alter ego and successor liability theories based on that transfer, when two conditions were met: when the allegedly fraudulent transfer had occurred and when Sovereign breached the contract, thereby incurring the obligation to pay Mariner liquidated damages. See OCGA § 18-2-21 ("[c]reditors may attack as fraudulent a judgment, conveyance, or any other arrangement interfering with their rights, either at law or in equity"); *Kent v. White*, 279 Ga. App. 563, 565 (3) (631 SE2d 782) (2006) (claim for fraudulent transfer to avoid a judgment accrued when both obligation to pay judgment and transfer had occurred). See generally *Kipperman v. Onex Corp.*, 411 B.R. 805, 833-834

16

(II) (A) (2) (N.D. Ga. 2009) (applying Georgia law and finding date of injury is date party incurs obligation to pay). It is undisputed that both conditions — the transfer of assets and the breach that incurred an obligation to pay liquidated damages — occurred more than four years before Mariner filed the instant action.

Contrary to Mariner's arguments otherwise, it was not required to wait until a judgment had been entered to pursue the claims it raises in this action. OCGA § 9-11-18 (b) expressly provides, "a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him without first having obtained a judgment establishing the claim for money." See *Washington Street Apts. v. Fredd*, ___ Ga. App. ___, ___ (2) (___ SE2d ___) (Case No. A25A0183, decided ___) (holding that a debtor subject to the Uniform Voidable Transactions Act, OCGA § 18-2-70 et seq., includes "a person who is liable on a right to payment that . . . has not yet been reduced to judgment, is in dispute, and is contingent on obtaining a judgment"). We hold that Mariner could have maintained a claim challenging the transfer, and so its claim accrued, more than four years before it filed this lawsuit.

(e) *The limitation period was not tolled*

17

This does not resolve the issue of whether the statute of limitation had run at the time Mariner filed its complaint, however, because when the gravamen of a complaint is fraud, as it is here, the limitation period is tolled "until the fraud is discovered or by reasonable diligence should have been discovered. Reasonable diligence cannot be measured by a subjective standard, but, rather, must be measured by the prudent man standard, which is an objective one." *Coe*, 314 Ga. at 530 (3) (citation and punctuation omitted).

"Although issues concerning a plaintiff's diligence in discovering fraud is usually for the trier of fact, a plaintiff may fail to exercise due diligence as a matter of law." *Falanga v. Kirschner & Venker*, 286 Ga. App. 92, 94 (1) (a) (648 SE2d 690) (2007). We hold that the trial court did not err in finding that, as a matter of law, Mariner should have discovered the allegedly fraudulent nature of the transfer (because it left Sovereign insolvent) no later than 2006.

Mariner claims to have learned of Sovereign's insolvency, and therefore the fraudulent nature of the 2005 transfer, in an affidavit of indigence that Sovereign filed in April 2013. Sovereign filed that affidavit, along with its notice of appeal leading to

18

*Mariner II*, in lieu of posting a supersedeas bond. Mariner filed its lawsuit on December 30, 2016, less than four years after the filing of the affidavit of indigence.

As detailed below, it is undisputed that Mariner knew, no later than March 28, 2006, that Sovereign had transferred its assets to Holdings. And it should have known the consequences of the transfer at least by then.

Defendant Cronquist, an owner and executive of Holdings, testified by affidavit that he has been with Holdings since its founding in 2003. He testified that, as of its founding, Holdings has owned Sovereign and that Mariner recommended the hierarchy and the structure of the Sovereign companies when the Sovereign group was created.

Cronquist testified that under the administrative services agreement, Mariner provided "the entire range of administrative services for the Sovereign Group . . . including accounting; the preparation of financial statements; billing and collection; accounts payable and receivable; human resources and payroll; procurement of services and supplies; treasury and cash management; and IT." Cronquist testified that

> from the inception of the Sovereign Group entities until December 31, 2005[, months after the transfer of assets and shortly after Sovereign,

Holdings, and Southern sued Mariner for breach of contract], Mariner was aware of the Sovereign Group's finances, transactions, management, and corporate structure. Among other things, Mariner controlled and had complete access to all of these entities' records, all of their accounting and financial information, and even authority to make wire transfers and other payments from [the] entity bank accounts.

Cronquist was deposed on March 28, 2006, in the earlier litigation. When he was asked about the relationship between Sovereign, Holdings, and Southern (the third plaintiff in the underlying litigation), Cronquist explicitly testified that Holdings, not Sovereign, was the sole member of the limited liability companies that operated the nursing homes. He testified that although Sovereign was originally "in the ownership chain" of the limited liability companies, Holdings is now their direct owner, and that Sovereign's sole purpose was as to act as a pay agent for the limited liability companies.

Mariner has not rebutted that testimony. As plaintiff, Mariner "has the burden of showing the existence of facts that would toll the statute of limitation." *Falanga*, 286 Ga. App. at 94 (1) (a). But Mariner has pointed to no specific evidence, other than the affidavit of indigence, and thus has not met its burden. See *Averill v. Akin*, 219 Ga.

App. 32, 33 (1) (463 SE2d 730) (1995) (fraud claim not tolled because plaintiff "cannot turn a blind eye on information available to him")

The undisputed evidence of Mariner's knowledge of Sovereign's finances, transactions, management, and corporate structure along with its undisputed knowledge in 2006 that Sovereign had transferred to Holdings its limited-liability-company assets "establishes that as a matter of law [the] alleged fraud . . . could have and should have been discovered through the exercise of reasonable diligence" no later than 2006. *Falanga*, 286 Ga. App. at 94 (1) (a). Therefore the four-year limitation period began to run, at the latest, in 2006 and ran until 2010, more than six years before Mariner filed this action.

For these reasons, we hold that the trial court did not err in granting the defendants' motion for summary judgment. We do not reach Mariner's other enumerations of error.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*