FOURTH DIVISION
DOYLE, P. J.,
ANDREWS, P. J., and BOGGS, J.

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 26, 2013**

# In the Court of Appeals of Georgia

A12A1771. FREUND et al. v. WARREN.

ANDREWS, Presiding Judge.

Chris Freund and Freund, Ltd. (collectively "Freund") appeal the grant of summary judgment to All Cobb Bail Bonds, Inc ("ACBB"). This action arises from an Interpleader[1] filed by the Sheriff of Cobb County to determine who should receive two certificates of deposit ("CDs") held by the Sheriff as collateral. Freund contends the trial court erred by denying its motion for summary judgment asserting his entitlement to the CDs, erred by granting ACBB's motion and awarding ACBB the CDs, and erred by granting attorney fees to ACBB. As we find that the trial court

---

[1] OCGA § 23-3-90 (a): "Whenever a person is possessed of property or funds or owes a debt or duty, to which more than one person lays claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead."

misinterpreted the relationships of the parties as defined in the controlling documents, we must reverse the trial court.

1. The record shows that Freund, Ltd. operated a bail bonding business under the trade name of All Cobb Bail Bonds. All Cobb Bail Bonds was not a corporation; it was merely a trade name under which Freund, Ltd. operated its bail bond business.

In April of 2007, Freund, David Eugene Smith, and Robert Scott Hall entered into a Purchase and Sales Agreement ("the Agreement"). According to the Agreement, Smith and Hall in their individual capacities would purchase and Chris Freund would sell certain assets of All Cobb Bail Bonds as defined in the Agreement. The assets included "[a]ll interest in remaining Certificates of Deposit being held in Trust by the Cobb County Sheriff." The agreement identified Hall and Smith, "collectively and individually" as the Purchaser and Hall and Smith both signed the Agreement in their individual capacities without any corporate designation[2] on May 1, 2007. Chris Freund, however, signed as the President of "Freund Limited DBA All Cobb Bail Bonds," identified as the Seller. In the Agreement Hall and Smith, as the Purchaser, represented and warranted that

_____

[2] Other documents in the record signed by Smith and Hall show that they know how to sign in their corporate capacities if that is their intent.

[t]his Agreement has been duly executed by the Purchaser and constitutes a legal and binding obligation of the Purchaser, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy and insolvency, by other laws affecting the rights of creditors generally, and by equitable remedies granted by a court of competent jurisdiction.

The record contains a note between Sheriff's office personnel stating, "Attached are documents to be signed that are related to the sale of All Cobb Bail Bonds. The CD's do not need to be amended. Changes do not need to be made to the escrow account. Enclosed are the new agreements and the power of attorney for R. Scott Hall to allow David Smith to be held as contact person. Sheriff Warren's signature is needed." Although the note is not dated, the note is initialed by the recipient on July 23, 2007.

All Cobb Bail Bonds is defined in the agreement ("the Deposit Agreement") between All Cobb Bail Bonds[3] and the Sheriff of Cobb County, as a "professional bonding business." The Deposit Agreement with the Sheriff allowed All Cobb Bail Bonds to operate a professional bonding business. The Deposit Agreement required

---

[3] Throughout the agreement, All Cobb Bail Bonds is so named without any corporate designation.

All Cobb Bail Bonds to establish a "cash reserve or deposit account to be utilized to underwrite said appearance bonds" by depositing $150,000 with the Sheriff. The Deposit Agreement provided the working arrangement between the Sheriff and All Cobb Bail Bonds. One of the provisions in the Deposit Agreement covered the actions to be taken upon termination of the Deposit Agreement. In such event, "the principal amount of said savings account shall be withdrawn from said account by check or other withdrawal instrument required by said Bank, signed by the Sheriff . . . and the proceeds shall be paid over to the professional bonding business. . . ."

The Deposit Agreement required the professional bonding business to "provide (sic) to the Sheriff the names and percentage of interest of all partners, officers, stockholders, and any other person or corporation having an interest in the ownership and/or direction of the business of the professional bonding business." The Deposit Agreement also required the professional bonding business to notify the Sheriff of any changes in the ownership or direction of the business.

The Deposit Agreement is signed by the Sheriff of Cobb County and by Robert Scott Hall and David H. Smith. Following Hall and Smith's signatures are their typed names and the notation "Individually" and on the next lines "All Cobb Bail Bonds." The Deposit Agreement is dated July 17, 2007.

4

The record also contains a FAX cover sheet from R. Scott Hall to the Sheriff's Bond Administrations Office forwarding the Articles of Incorporation for "All Cobb Bail Bonds, Inc." The cover sheet informed the Sheriff's office that the "stockholders of All Cobb Bail Bonds[,] Inc[.,] are R. Scott Hall and David E[.] Smith with each owning 500 shares of stock."

In his deposition, Hall asserted that the CDs were the property of ACBB. He testified that

> [f]rom the day we started the transaction, we operated under All Cobb Bail Bonds, Incorporated, from day one and with that intention. We never done business as individuals; we always done business as a corporation. When the transaction was completed, it was done as All Cobb Bail Bonds, Incorporated. And the County was actually informed of that fact, and we were advised by the County to do business as All Cobb Bail Bonds, Incorporated. The CDs were also supposed to be listed in the name of All Cobb Bail Bonds, Incorporated. If they didn't, that's the County['s] mistake, not our mistake. But from day one, everything we did from the beginning was supposed to be done in All Cobb Bail Bonds, Incorporated, assets and all.

Hall admitted, however, that he and Smith had not signed anything that transferred ownership from them personally to the corporation, that they were not paid by the

5

corporation for the assets, and that no documentation showed any "kind of change of ownership."

In Georgia,

[t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citation and punctuation omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003). Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. See *Chester v. Smith*, 285 Ga. 401, 401 (677 SE2d 128) (2009); *Merlino v. City of Atlanta*, 283 Ga. 186, 186 (657 SE2d 859) (2008). Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a

matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995).

Although several facts are disputed in this appeal, these disputes do not concern facts material to the disposition of the case. Our primary consideration is the contents of the writings which are not in dispute.

> The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction. Further, the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Moreover, no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation. It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. Further, Georgia law imposes on both parties an implied duty of good faith in carrying out the mutual promises of the contract.

(Citation and punctuation omitted.) *Homelife Communities Group v. Rosebud Park, LLC*, 280 Ga. App. 120, 122 (633 SE2d 423) (2006). "It is the function of the court to construe the contract as written and not to make a new contract for the parties."

7

(Punctuation omitted.) *Ga. Magnetic Imaging v. Greene County Hosp. Auth.*, 219 Ga. App. 502, 504 (1) (466 SE2d 41) (1995).

Considering the Agreement, the plain language of the first page of the Agreement shows that the "Purchaser" were Hall and Smith "collectively and individually" and Hall and Smith's signatures, which contain no words of limitation, are in their individual capacities. Therefore, the assets, including the CDs, were sold to Hall and Smith individually, and the CDs became their personal property.

Further, contrary to Hall's deposition testimony, the signatures on the Deposit Agreement show the word individually and the next line shows All Cobb Bail Bonds, without any corporate designation.[4] Therefore, the Deposit Agreement establishes that Hall and Smith were granted authority to operate the bonding company, All Cobb Bail Bonds, in their individual capacities and, more importantly, the CDs being held in trust by the Sheriff were the property of Hall and Smith. In his deposition Hall

---

[4] Our law only permits such parole evidence to determine the intent of the parties when the agreement is ambiguous. *Lifestyle Home Rentals, LLC v. Rahman*, 290 Ga. App. 585, 587 (1) (660 SE2d 409) (2008). See *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82-83 (653 SE2d 513) (2007) ("Parol evidence is not admissible to contradict or construe an unambiguous contract.") (citation and punctuation omitted). Neither the Agreement nor the Deposit Agreement are ambiguous. A word or phrase is ambiguous when its meaning is uncertain and it may be fairly understood in more ways than one. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (381 SE2d 322) (1989).

conceded that no action was taken to transfer ownership of the CDs to All Cobb Bail Bonds, Inc. Additionally, the Deposit Agreement consistently refers to All Cobb Bail Bonds and not to All Cobb Bail Bonds, Inc.

Hall has submitted an affidavit which contradicts his deposition testimony in numerous respects without explanation. On motion for summary judgment a party's self-conflicting testimony is to be construed against him unless a reasonable explanation for the contradiction is offered. *Gentile v. Miller &c., Inc.*, 257 Ga. 583 (361 SE2d 383) (1987); *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680) (1986). Additionally, Hall's affidavit contains significant hearsay about what the Sheriff's Bonding Office told him. In summary judgment proceedings, however, the rules on admissibility of evidence apply, and hearsay has no probative value unless it is part of the res gestae. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (397 SE2d 576) (1990). Therefore, we cannot consider what the Sheriff's office personnel may have told him about processing his application.

Under the terms of the Deposit Agreement, once the bonding business was terminated, the Sheriff was to transfer the CDs to "the professional bonding business." According to the terms of the Deposit Agreement, the professional bonding business in this case would be All Cobb Bail Bonds which was owned by

Hall and Smith in their individual capacities. Even though it appears that the Sheriff's office transferred some funds to All Cobb Bail Bonds, Inc., these transfers were mere administrative actions without the full knowledge of the ownership of the funds held in trust by the Sheriff. Moreover, no Deposit Agreement authorizing All Cobb Bail Bonds, Inc., to operate a professional bonding business is of record in this case. Consequently, these actions by the Sheriff's administrative staff did not transfer legal title to the funds represented by the CDs and held in trust for Hall and Smith doing business as All Cobb Bail Bonds, in accordance with the Deposit Agreement.

Even though ACBB existed as a corporation with Hall and Smith as stockholders when Hall and Smith were purchasing the assets of All Cobb Bail Bonds and signing the Deposit Agreement, that is of no significance because the documents plainly show that Hall and Smith signed the Agreement and the Deposit Agreement in their individual capacities. The law of corporations is founded on the legal principle that each corporation is a separate entity, distinct and apart from its stockholders. *Exchange Bank of Macon v. Macon Constr. Co.*, 97 Ga. 1, 7 (25 SE 326) (1895). Thus, Hall and Smith, individually are separate and distinct legal entities from ACBB.

10

The record further shows that when Hall and Smith failed to make the payments required by the Agreement, Freund sued them and obtained a judgment for $234,915.90, and that Freund properly recorded a writ of Fieri Facias in that amount. Thus, as Freund is a judgment creditor of Hall and Smith, he is entitled to recover the proceeds that were paid in the registry of the court to which Hall and Smith would otherwise be entitled as the owners of the CDs.

Therefore, the trial court erred by denying Freund's motion for summary judgment, and the judgment of the trial court must be reversed and the case remanded to the trial court with direction to vacate its earlier denial of Freund's motion and to grant summary judgment to Freund. Of course, Freund's entitlement to the funds is subject to any outstanding liens.

2. In view of our disposition of this case in Division 1, the trial court's grant of summary judgment and award of attorney fees to All Cobb Bail Bonds, Inc., are also reversed.

*Judgment reversed and case remanded with direction. Doyle, P. J., and Boggs, J., concur.*

11