**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2017**

# In the Court of Appeals of Georgia

A16A1632. IN RE: ESTATE OF EMMETT TAYLOR BOYD.

McMILLIAN, Judge.

After Emmett Boyd ("Emmett") died, Betty Boyd ("Betty") petitioned the probate court for a year's support. Charlie Boyd ("Charlie"), Emmett's son from a prior marriage, filed a caveat based on a post-nuptial agreement entered into by Emmett and Betty some years earlier. The case was transferred to the Superior Court of Camden County, which granted summary judgment to Charlie, denied summary judgment to Betty, and dismissed her petition. On appeal, Betty concedes that the post-nuptial agreement is enforceable; however, she raises three related enumerations of error, contending that enforcement of the agreement should not bar her from recovering what she seeks in her petition. Because the trial court failed to properly

construe the terms of the agreement and Betty's purported waiver of a year's support, we vacate the judgment and remand for further proceedings.

We review a grant of summary judgment de novo, viewing the evidence and all reasonable conclusions or inferences drawn from it in the light most favorable to the nonmovant. *Dewrell Sacks, LLP v. Chicago Title Ins. Co.*, 324 Ga. App. 219, 220 (749 SE2d 802) (2013). So viewed, the evidence shows that, in January 1987, Emmett and Betty were married in Camden County, Georgia. Both Emmett and Betty had been married previously and had children from their earlier marriages. Following a brief separation after 15 years of marriage, the parties reconciled and entered into a post-nuptial agreement (the "Agreement") in November 2002. In negotiating and entering into the Agreement, both parties were represented by independent counsel. The Agreement contemplates the manner in which assets will be distributed if the parties were married at the time of either party's death,[1] and it also provides for the

---

[1]Paragraph 3 of the Agreement provides:

In the event of the death of [Emmett], then [Betty] shall receive [Emmett]'s one-half interest in the real estate comprising their residence located at [ ], Woodbine, GA 31569, including all of the furniture and furnishings, with the exception of any personal effects belonging to [Emmett] that [Emmett]'s son may desire to take.

2

distribution of assets if the parties separated or filed for divorce prior to either party's death.[2]

In February 2015, Emmett left the marital residence in Woodbine, Georgia, to go to Tallahassee, Florida, where his son Charlie lived. Betty and Charlie dispute whether Emmett intended to simply visit his son in Tallahassee or whether he intended to separate from his wife and move there. It is undisputed, however, that after Emmett arrived in Tallahassee, he moved into an assisted living facility, where he briefly resided until his death.

In late February 2015, a Georgia divorce attorney was contacted about representing Emmett in a divorce proceeding.[3] Although the two never met in person, the attorney spoke with Emmett over the phone about his reasons for seeking a

---

[2] Paragraph 7 of the Agreement provides:

> In the event that either [Betty] or [Emmett] moves from the residence and resides separately from the other or in the event that either of them files a divorce action against the other, then they agree that they will receive as full, final and complete settlement of any claims for alimony, support, or division of property from the other one-half of all items remaining on Exhibit "D" . . . and each party shall release the other from any further claims that each of them may have against the other.

[3] The attorney's affidavit does not specify who initially contacted her.

divorce. The attorney later averred that she found Emmett to have a firm grasp of the facts and a full understanding of why he wanted a divorce.[4] On April 27, 2015, the lawyer provided Emmett with a copy of the draft complaint for divorce and reviewed each paragraph with him over the phone to obtain his approval. The lawyer forwarded the draft complaint to Emmett with a verification for his signature, which was executed on April 28, 2015, in the presence of a notary public.[5] The lawyer mailed the verified complaint for divorce to the Superior Court of Camden County on Thursday, April 30, 2015. The next day, Emmett's health declined, and he was admitted to the hospital. On Monday, May 4, 2015 at 9:30 a.m., the Clerk of Court for the Superior Court of Camden County file stamped the divorce complaint.

---

[4] Although Betty maintains that Emmett may not have been competent to hire an attorney or file for divorce, the evidence she submitted to support this position was not sufficient to meet her burden to establish Emmett's incompetency. See *Kindred Nursing Centers Ltd. Partnership v. Chrzanowski*, 338 Ga. App. 708, 713 (1) (791 SE2d 601) (2016). Specifically, the submission of his medical records without expert testimony interpreting them and the affidavit from her daughter, who is also a nurse, about an interaction with Emmett in February 2015 in which he denied wanting a divorce, do not meet the burden of establishing Emmett's incompetency at the time he retained the attorney or executed his verification. See id.

[5] For the first time on appeal, Betty objects to the verification on the grounds that it is hearsay in the absence of testimony from the notary public. As this issue was not raised before the trial court, we will not consider it for the first time on appeal. *Davis v. Whitford Properties, Inc.*, 282 Ga. App. 143, 145 (1) (637 SE2d 849) (2006).

Unfortunately, just hours later, Emmett passed away at the age of 91 as the result of cardiopulmonary arrest and dementia.

Following Emmett's death, Betty filed a Petition for a Year's Support in the Probate Court of Camden County, Georgia (the "Petition"). Attached to the Petition was a Schedule of Real and Personal Property listing the property and sums Betty proposed to receive. In particular, Betty listed the marital residence, the furniture located therein, and certain stocks and cash identified in the Agreement. In response to Betty's Petition, Charlie filed a caveat and objection, claiming that the Agreement barred Betty from receiving the items she sought through her Petition.

Both parties filed cross-motions for summary judgment, in which they expressly admitted the validity of the Agreement, but disputed which paragraph of the Agreement should govern the distribution of assets after Emmett's death. Specifically, Betty sought enforcement of Paragraph 3 of the Agreement, under which she could inherit Emmett's one-half interest in the marital residence. Charlie, on the other hand, argued that Paragraph 7 of the Agreement controls and provides that Betty is entitled to only one-half of the assets listed on Exhibit D upon the separation of the parties or filing for divorce by Emmett – which he argued would prevent Betty from obtaining Emmett's one-half interest in the marital residence as a year's support.

5

Following oral argument on the parties' cross-motions, the trial court granted Charlie's motion for summary judgment, denied Betty's motion for summary judgment, and dismissed Betty's Petition. The superior court specifically found that Emmett's filing for divorce triggered application of Paragraph 7 of the Agreement, which prohibited Betty from inheriting what she sought through her Petition. This appeal followed.

At the outset, we note that Betty attempts to recover from Emmett's estate by claiming a year's support, which under Georgia law entitles a surviving spouse to support and maintenance for 12 months following the other spouse's death. OCGA § 53-3-1 (c). A contractual agreement to waive this right to claim a year's support, however, can be valid in Georgia. See *Hiers v. Estate of Hiers*, 278 Ga. App. 242, 244-45 (1) (628 SE2d 653) (2006). When enforcing a post-nuptial contract, such as the Agreement here, courts are to enforce the contract as written by the parties. *Eversbusch v. Eversbusch*, 293 Ga. 60, 62 (1) (743 SE2d 418) (2013). In doing so,

> [w]e follow a three-step process in construing a contract, first determining if the contract language is clear and unambiguous. When a contract contains no ambiguity, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. If, however, the contract is unclear, we attempt to resolve the ambiguity by applying the rules of contract construction. Where the

6

> contract remains ambiguous even after we apply the rules of construction, then the parties' intent must be determined by the factfinder.

(Citations and punctuation omitted.) *Global Ship Systems, LLC v. Continental Cas. Co.*, 292 Ga. App. 214, 215-16 (1) (663 SE2d 826) (2008). Under Georgia law, a contract is unambiguous when it is capable of only one reasonable interpretation, and, if there is no ambiguity, the contract is enforced according to its plain terms. *Freund v. Warren*, 320 Ga. App. 765, 768-69 (1) (740 SE2d 727) (2013). When determining the meaning of the words used in a contract, the words will "generally bear their usual and common meaning and the usual and common meaning of a word may be supplied by common dictionaries." (Citation and punctuation omitted.) *Global Ship Systems*, 292 Ga. App. at 216 (1).

This case is undoubtedly unique, given the narrow window of time between the filing of the divorce complaint with the Clerk and Emmett's death merely hours later. We recognize that it is unfortunate that the analysis as to which provision of the Agreement was triggered hinges on a few short hours of a decades-long marriage; however, we must construe the Agreement pursuant to its terms. *Freund*, 320 Ga. App. at 768-69 (1). Turning to the language at issue, Paragraph 7 provides:

7

In the event that either Wife or Husband moves from the residence and resides separately from the other or in the event that either of them files a divorce action against the other, then they each agree that [1] they will receive as full, final and complete settlement of any claims for alimony, support, or division of property from the other one-half of all items remaining on Exhibit "D" as they may change from time to time with sales and/or purchases and [2] each party shall release the other from any further claims that each of them may have against the other.[6]

The trial court found that Paragraph 7 controlled because Emmett "filed" his divorce action prior to his death. We agree that Paragraph 7 controls because the Agreement's use of the word "file" is not ambiguous and has a common definition: "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record." *Black's Law Dictionary* (10th ed. 2014); *Walls v. Walls*, 278 Ga. 206, 209 (599 SE2d 173) (2004) (Carley, J., concurring specially) (acknowledging the same definition of "file" per the 7th Edition of *Black's Law Dictionary*).[7]

---

[6]The numbers are not in the original text of the Agreement, but have been inserted for ease of discussion.

[7] The 7th Edition of *Black's Law Dictionary* was the most current edition in 2002, when the Agreement was signed by the parties, however the definition is identical to the definition in the 10th Edition of *Black's Law Dictionary*.

However, the trial court also concluded, without further analysis, that Betty was thereby precluded from pursuing her petition for year's support. This is error. Clause 1 refers to the settlement of claims for alimony, support, or division of property in a divorce.[8] However, the divorce action here was abated following Emmett's death. *Guthrie v. Guthrie,* 277 Ga. 700, 701 n.1 (594 SE2d 356) (2004) (unresolved claim for divorce is purely personal and abates upon death). Therefore, clause 1 does not control. Clause 2, on the other hand, is a general release and thus could be read to include a release of all claims that Betty has against Emmett's estate for year's support pursuant to OCGA § 53-3-1.

The question then becomes whether Betty's petition for year's support is a "further claim" that was released in clause 2 of Paragraph 7. Our Supreme Court has held that "[i]n order for the relinquishment of a widow's right to claim a year's support to be binding on her, it must be made with knowledge of her rights and of the condition of the estate." *Hubbard v. Hubbard*, 218 Ga. 617, 619 (2) (129 SE2d 862)

---

[8] The term "alimony" can only refer to the divorce action mentioned previously in Paragraph 7, and "support" and "division of property" are terms statutorily and commonly used in conjunction with alimony to refer to claims in a divorce. See OCGA § 19-5-5 (b) (6) ("Where alimony or support or division of property is involved, the property and earnings of the parties, if such is known."); OCGA § 19-6-1 (a) (defining alimony).

(1963). See also *Taylor v. Taylor*, 288 Ga. App. 334, 338 (2) (654 SE2d 146) (2007).

And, "[w]hether the widow made a knowing waiver of her right to year's support based upon an adequate consideration is a question of fact." *Adams v. Adams*, 249 Ga. 477, 481 (4) (291 SE2d 518) (1982).

Here, it appears that the undisputed facts were that Betty was represented by counsel at the time the Agreement was executed and knew the condition of the estate as evidenced by the various schedules of assets attached to the Agreement. However, the caveator did not present any evidence on whether Betty was aware of her right to a year's support, nor was there any testimony from Betty in the record about her knowledge of her rights. Cf. *Taylor*, 288 Ga. App. at 338 (trial court was entitled to disbelieve wife's testimony that she was unaware of her right to a year's support or the condition of the estate when she entered into the agreement). Accordingly, we vacate the judgment and remand for the trial court to consider this issue and for further proceedings consistent with this opinion.[9]

---

[9] We specifically do not express an opinion on whether any other provisions of the Agreement, such as Paragraph 3, affects the disposition of the assets in the estate.

10

*Judgment vacated and case remanded. McFadden, P. J., concurs. Miller, P. J., concurs in judgment only.*