[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13666
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-01363-ELR


AARON'S INC.,

                                                        Plaintiff – Appellant,

versus

MKW INVESTMENTS, INC.,
MKW II INVESTMENTS, LLC,
KEVIN WELKER,
SUSAN WELKER,

                                                        Defendants – Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 5, 2019)

Before JILL PRYOR, BRANCH and JULIE CARNES, Circuit Judges.

PER CURIAM:

Aaron's, Incorporated appeals the district court's denial of its motion for partial summary judgment and its grant of summary judgment to MKW Investments, Incorporated, MKW II Investments, LLC, Kevin Welker, and Susan Welker (collectively, "MKW").  Aaron's brought this diversity action against MKW seeking to recover, pursuant to an indemnification agreement, fees and costs it incurred in defending itself against and settling a separate lawsuit brought against MKW and Aaron's ("Underlying Litigation").  The district court granted MKW summary judgment on the ground that Aaron's extinguished MKW's liability for indemnification when in the Underlying Litigation Aaron's decided to terminate the representation of MKW's chosen counsel and hire an attorney of its own choosing instead.  On appeal, Aaron's argues that the district court erred in granting MKW summary judgment because its decision to change counsel had no bearing on MKW's liability for indemnification.  After careful review, we agree. Accordingly, we vacate the district court's denial of Aaron's motion for partial summary judgment, vacate the court's grant of MKW's motion for summary judgment, and remand this case to the district court for further proceedings.

## I.    BACKGROUND

### A.    Facts

Aaron's is a lessor and retailer of "furniture, consumer electronics, home appliances, and accessories, with both company-owned and franchised stores."

2

Doc. 40-2 at 1 ¶ 2.[1]  MKW owned a franchised Aaron's store in Warrensburg,

Missouri ("Warrensburg Store").

Aaron's and MKW entered into a Franchise Agreement to govern their

relationship regarding the Warrensburg Store.  As set forth below, the Franchise

Agreement contained an indemnification provision, Section 7.20, wherein MKW

agreed to indemnify Aaron's for certain expenses it might incur as a result of

MKW's conduct:

> Franchisee shall indemnify, defend and hold harmless Franchisor . . .
> for and from any and all claims, demands, suits, proceedings, fines,
> losses, damages, costs and expenses (including reasonable attorney's
> fees) suffered or incurred, directly or indirectly, by Franchisor or any
> of them (collectively, "Damages") as a result of (i) any breach or
> other failure by Franchisee to perform its obligations hereunder, or (ii)
> any other action or inaction by Franchisee or any other person
> resulting from or in connection with the operation of the Franchised
> Business . . . .  Franchisor shall have the option, in its sole discretion,
> to defend any action or to allow Franchisee to defend such action with
> counsel satisfactory to Franchisor.

Doc. 40-2 at 36-37 § 7.20.  The term "Franchisee" referred to MKW Investments

Inc.,[2] "Franchisor" referred to Aaron's, and "Franchised Business" referred to the

Warrensburg Store.  *See id.* at 7, 8.  Aaron's and MKW executed the Franchise

Agreement contemporaneously with Aaron's execution of a Payment and

---

[1] Citations in the form "Doc #" refer to the numbered entry on the district court's docket.

[2] MKW Investments, Inc., later assigned its interest in the Warrensburg Store to MKW II Investments, LLC.

3

Performance Guarantee with Kevin and Susan Welker.  Under the Payment and Performance Guarantee, the Welkers agreed to guarantee the payment and performance of MKW's obligations, indebtedness, and liabilities under the Franchise Agreement or otherwise.

The parties' dispute in the instant action arises from a separate lawsuit that a former MKW employee brought against Aaron's and MKW in Missouri state court.  In that Underlying Litigation, the plaintiff, Tanya Mundy, alleged that the general manager of the Warrensburg Store, Scott Hibbs, created a hostile work environment by sexually harassing her on numerous occasions.  Mundy further alleged that when she complained about Hibbs to MKW and Aaron's, they retaliated by terminating her employment.  Mundy's complaint requested compensatory and punitive damages jointly and severally from the defendants.

MKW's insurer retained counsel to defend MKW and Aaron's in the Underlying Litigation.  During the pendency of that litigation, however, Aaron's chose to hire its own attorney instead.  Aaron's and Mundy eventually reached a settlement.  Aaron's then tendered to MKW its demand for indemnification for the expenses it incurred in defending itself against and settling Mundy's lawsuit. MKW responded by refuting Aaron's assertion that the Franchise Agreement required it to indemnify Aaron's for its defense and settlement expenses.  MKW contended among other things that Section 7.20 required no indemnification

4

because the provision was ambiguous regarding its duty to indemnify when Aaron's initially allowed MKW to provide counsel but later replaced that counsel.

## B.    Procedural History

Aaron's filed a four-count complaint against MKW.  Count I alleged that MKW breached the Franchise Agreement by refusing to indemnify Aaron's. Count II requested a declaratory judgment that, by virtue of their failure to comply with their indemnification obligations under Section 7.20, some of the defendants were in default of a separate franchise agreement.  Count III alleged that Kevin and Susan Welker breached their personal guarantees by failing to satisfy MKW's outstanding indemnification obligation.  Count IV sought from MKW, pursuant to the Franchise Agreement, litigation expenses for costs incurred prosecuting the instant action.  MKW answered the complaint.

Following discovery, the parties filed cross-motions for summary judgment. Aaron's moved for partial summary judgment on Counts I and III of the complaint, only as to liability.  MKW, in contrast, moved for summary judgment on all claims, arguing among other things that it fulfilled its obligations under Section 7.20 by initially providing counsel because the provision included no unambiguous language allowing Aaron's to both retain counsel provided by MKW and later replace that counsel while still benefitting from indemnification.

5

The district court agreed with MKW that Section 7.20 was ambiguous regarding whether Aaron's had the option to retain its own counsel after allowing MKW to provide representation.  Construing that language against Aaron's, as it read Georgia law to instruct, the district court determined that Section 7.20 imposed no requirement on MKW to indemnify Aaron's for its expenses in defending against and settling the Underlying Litigation.  It therefore determined that MKW committed no breach of the Franchise Agreement.  Because the conclusion that MKW committed no breach was dispositive of each claim alleged in the complaint, the district court denied Aaron's motion for partial summary judgment and granted MKW's motion.

This is Aaron's appeal.

## II.    STANDARD OF REVIEW

"We review an order granting summary judgment de novo and apply the same legal standards that governed the district court's decision."  *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  A district court may grant summary judgment only when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.   DISCUSSION

Aaron's argues that the district court erred in determining that the Franchise Agreement was ambiguous as to MKW's liability for indemnification.  According to Aaron's, Section 7.20 unambiguously required indemnification because it contained no provision establishing that by deciding to change counsel Aaron's forfeited its entitlement to indemnification.  MKW responds that Section 7.20 is ambiguous, that the ambiguity must be construed against Aaron's, and when properly construed, Section 7.20 required no indemnification.  We agree with Aaron's.

Under Georgia law,[3] "[t]he scope of a written indemnification [provision] is a question of law for the court, which must strictly construe the [provision] against the indemnitee." *JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.*, 717 S.E.2d 219, 228 (Ga. Ct. App. 2011) (internal quotation marks omitted).  "'The cardinal rule of contract construction is to ascertain the intention of the parties.'" *Unified Gov't of Athens-Clarke Cty. v. Stiles Apartments, Inc.*, 764 S.E.2d 403, 407 (Ga. 2014) (quoting O.C.G.A. § 13-2-3).  When engaging in the task of contract construction, Georgia courts apply a three-step framework.  *City of Baldwin v. Woodard & Curran, Inc.*, 743 S.E.2d 381, 389 (Ga. 2013).  "First, the . . . court

---

[3] We apply Georgia law because, by taking the position that Georgia law applies, Aaron's has abandoned any argument that another state's law should apply. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal . . . are deemed abandoned.").

must decide whether the language is clear and unambiguous.  If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." *Id.* (internal quotation marks omitted).  Second, "if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity." *Id.* (internal quotation marks omitted). Third, "if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." *Id.* (internal quotation marks omitted).  "Ambiguity is defined as duplicity; indistinctness; an uncertainty of meaning or expression used in a written instrument, and . . . also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." *Cahill v. United States*, 810 S.E.2d 480, 482-83 (Ga. 2018) (internal quotation marks omitted).  "Under Georgia law, a contract is unambiguous when it is capable of only one reasonable interpretation . . . ." *In re Estate of Boyd*, 798 S.E.2d 330, 333 (Ga. Ct. App. 2017).

We conclude that Section 7.20 of the Franchise Agreement is unambiguous. By its terms, Section 7.20 required MKW to indemnify Aaron's "for and from any and all claims, . . . damages, costs and expenses (including reasonable attorney's fees) . . . incurred, directly or indirectly, by [Aaron's] . . . as a result of . . . any . . .

8

action or inaction by [MKW] or any other person resulting from or in connection with the operation of [the Warrensburg Store]." Doc. 40-2 at 36-37 § 7.20. In the Underlying Litigation, Aaron's incurred costs defending itself against and settling claims brought by Mundy in connection with the operation of the Warrensburg Store. Therefore, Section 7.20 required MKW to indemnify Aaron's for and from expenses incurred in the Underlying Litigation. *See First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. 2001) ("Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning.").

We reject MKW's argument that we may construe Section 7.20 as conditioning its indemnification obligation on Aaron's decision to either accept MKW's chosen counsel, or choose its own, but not both. MKW, in raising this argument, relies on Section 7.20's statement that Aaron's "shall have the option, in its sole discretion, to defend any action *or* to allow Franchisee to defend such action with counsel satisfactory to Franchisor." Doc. 40-2 at 37 § 7.20 (emphasis added). But MKW's reliance is misplaced. Neither that language nor any other term in Section 7.20 suggests that Aaron's decision to replace counsel chosen by MKW with counsel of its own choosing operates as a condition subsequent to MKW's duty to indemnify. *See Payne v. Middlesex Ins. Co.*, 578 S.E.2d 470, 472

9

(Ga. Ct. App. 2003) ("[A]mbiguity is not to be created by lifting a clause or portion of the contract out of context, nor are we to call forth doubt or make hypercritical constructions. The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover." (citations omitted) (internal quotation marks omitted)). Nor may we add such a term because "[i]t is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties." *Lee v. Mercury Ins. Co. of Ga.*, 808 S.E.2d 116, 124 (Ga. Ct. App. 2017) (internal quotation marks omitted). Aaron's decision to change counsel may, perhaps, affect the calculation of damages. But, as we have explained, it has no bearing on the question of whether the Franchise Agreement required MKW to indemnify Aaron's.

In sum, we conclude that Section 7.20 unambiguously required MKW to indemnify Aaron's for and from expenses incurred in the Underlying Litigation and that this obligation was not extinguished by any choice of Aaron's to replace MKW's chosen counsel with one of its own choosing.

Although the parties briefed the question, we do not decide whether MKW breached its duty to indemnify. The district court never reached that question because it determined that any such duty was extinguished by Aaron's choice to replace MKW's chosen counsel. The question whether MKW breached its duty to

10

indemnify by refusing Aaron's demand for payment is closely related to a separate issue that Aaron's asks us to forgo deciding:  the amount of damages to which it is entitled.  Because those issues are interrelated and went unaddressed by the district court, we think it best to allow that court to manage their disposition.  *See*

*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 & n. 4 (11th Cir. 2001) (expressing the preference that a district court address matters in the first instance before appellate review, even on summary judgment).  Similarly, although Aaron's asks us to determine that Kevin and Susan Welker are liable for breach of their guarantee of MKW's debts, the district court also has yet to address the merits of that issue.  We thus decline to decide that issue in the first instance on appeal and invite the district court to resolve it instead.

## IV.    CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment to MKW, vacate its denial of Aaron's partial motion for summary judgment, and remand the case to the district court so it may consider in the first instance whether summary judgment is otherwise appropriate.

**VACATED AND REMANDED.**

11