**THIRD DIVISION
MCFADDEN, C. J.,
DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 30, 2020**

# In the Court of Appeals of Georgia

A20A1464. CROWN SERIES, LLC et al. v. HOLIDAY HO-049 HOSPITALITY FRANCHISING, LLC.

HODGES, Judge.

Holiday Hospitality Franchising, LLC ("Holiday") sued Crown Series, LLC, 168 N. Michigan Series ("Crown") and Musa Tadros ("Tadros") after Crown sold certain real property slated for a Hotel Indigo in violation of the parties' license agreement. The parties filed cross-motions for summary judgment and, following a hearing, the State Court of DeKalb County granted Holiday's motion. Crown and Tadros appeal, contending that the trial court erred in: (1) finding that a liquidated damages provision in the parties' license agreement was enforceable; and (2) awarding prejudgment interest against Tadros in excess of a liability limitation in his personal guaranty. For the following reasons, we affirm.

"We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate." (Citation and punctuation omitted.) *905 Bernina Avenue Coop. v. Smith/Burns, LLC*, 342 Ga. App. 358, 361 (1) (802 SE2d 373) (2017). So viewed, the record reveals that Crown purchased a real estate parcel located at 168 North Michigan Avenue, Chicago, Illinois, on June 30, 2012 for $7.25 million. Thereafter, Holiday and Crown negotiated, and ultimately executed, a November 30, 2012 license agreement to convert the property into, and then operate, a Hotel Indigo (the "License Agreement"). Concerning potential changes in ownership, Paragraph 10.H (1) of the License Agreement provided that

> [n]otwithstanding any other term or provision of this License to the contrary, neither this License nor any right or interest herein is assignable or transferrable by Licensee. If Licensee (i) receives an offer to purchase or lease the Hotel or any portion thereof, (ii) desires to sell or lease the Hotel or any portion thereof, or (iii) wishes to convey the Hotel, Hotel site, or any interest in the Hotel, Licensee shall give prompt written notice thereof to Licensor, stating the identity of the prospective transferee, purchaser or lessee and the terms and conditions of the conveyance, including all other information with respect thereto, that Licensor may reasonably require.

2

Furthermore, Paragraph 14.I of the License Agreement, entitled "Performance of the Work," included a liquidated damages provision:

In the event Licensor terminates this License due to Licensee's breach of any of the obligations under the License prior to the time that Licensee is authorized to use the System[1] at the Hotel, Licensee shall pay to Licensor, as liquidated damages, a lump sum equal to the monthly average of all amounts that would have been payable to Licensor under paragraphs 3.B (1), (3) and (4)[2] of this License assuming the Hotel had collected Gross Rooms Revenue based on the average daily revenue per available room for all hotels in the System for the previous twelve (12) months, as determined by Licensor, multiplied by the greater of (a) six (6) or (b) the number of full and partial months from the Term Commencement Date to the termination date of the License.

Licensor and Licensee acknowledge and agree that it would be difficult to determine the injury caused to Licensor by termination of this License. Licensor and Licensee therefore intend and agree the above liquidated damages calculations to be a reasonable pre-estimate of Licensor's probable loss and not a penalty or in lieu of any other payment.

---

[1] The "System" refers to a program "designed to provide a distinctive, high quality hotel service to the public under the name 'Hotel Indigo.'"

[2] These provisions of the License Agreement, under the heading "Licensee's Responsibilities: Fees," detail the fees Crown owed to Holiday each month, royalties, and charges for optional products or services.

3

Contemporaneously with the License Agreement, Tadros executed a personal guaranty to ensure payment on Crown's behalf if necessary (the "Guaranty").

In December 2013, the City of Chicago denied Crown's application for a building permit due to the need for a specific easement. Crown attempted, without success, to obtain an easement over the course of the next several months. Due to the continuing delay and Crown's inability to secure a building permit for the proposed hotel, Crown sold the property on December 7, 2015 for $20 million. In a December 16, 2015 letter, Holiday terminated Crown's license and notified Crown and Tadros of resulting liquidated damages totaling $2,228,936. Thereafter, Holiday demanded payment of $2,228,936 in liquidated damages from Crown and Tadros, as guarantor, in a March 18, 2016 letter.

Holiday sued Crown and Tadros in a complaint filed May 19, 2016 following Crown and Tadros' failure to pay. Crown and Tadros moved for summary judgment alleging that Paragraph 14.I was unenforceable because it did not relate to Holiday's actual damages and because the record did not indicate that the parties intended the liquidated damages provision of Paragraph 14.I to provide for damages rather than a penalty. Holiday filed a competing motion for summary judgment, arguing that Crown and Tadros materially breached the License Agreement by selling the property

4

to a buyer who converted the property into a competing hotel and that Crown and Tadros' failure to secure financing for the project did not absolve them of paying the liquidated damages amount.

Following a hearing, the trial court granted Holiday's motion and awarded Holiday $2,228,936 in liquidated damages against Crown for breach of the License Agreement and against Tadros for breach of the Guaranty. The trial court also awarded Holiday $282,782.40 in attorney fees against Tadros, but in view of Tadros' liability limitation in the guaranty, the trial court then reduced the attorney fees award against Tadros to $271,064, resulting in a total award against Tadros for $2.5 million. Finally, the trial court awarded Holiday $598,097.98 in prejudgment interest against Crown and Tadros. This appeal followed.

1. In its first enumeration of error, Crown and Tadros contend that the trial court erred in granting Holiday's motion for summary judgment because the liquidated damages provision in the License Agreement was not enforceable. Specifically, Crown and Tadros argue that: (1) the parties did not intend for Paragraph 14.I to provide for liquidated damages rather than a penalty; and (2) Paragraph 14.I is not a reasonable pre-estimate of Holiday's probable loss. We find no error.

As a threshold matter, "Georgia law allows parties to provide for liquidated damages in their contracts, and unless the provision violates some principle of law, the parties are bound by their agreement." *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare*, 306 Ga. App. 873, 874 (1) (703 SE2d 687) (2010). A liquidated damages provision is enforceable if "(1) the injury caused by the breach is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated is a reasonable pre-estimate of the probable loss." Id. at 874-875 (1).

> Determining whether a liquidated damages provision is enforceable is a question of law for the court, which necessarily requires the resolution of questions of fact. . . . To obtain summary judgment, the moving party must show there is no genuine issue of material fact as to the three factors set out above and that the undisputed facts warrant judgment as a matter of law. To obtain summary judgment, a defendant need not produce any evidence, but must point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant.

(Citation omitted.) Id. at 875 (1). In this case, Crown and Tadros do not contest the first factor of the liquidated damages analysis — that "the injury caused by the breach

6

is difficult or impossible to estimate accurately[.]" Id. at 874 (1). Accordingly, we address in turn Crown and Tadros' arguments concerning the second and third factors.

(a) *Intent to Provide for Damages Rather than Penalty*. The gravamen of Crown and Tadros' argument that the parties did not intend for Paragraph 14.I to provide for liquidated damages is that the provision is "buried" in the License Agreement and that Tadros did not negotiate this particular section of the License Agreement. These arguments fail.[3]

At the outset, we note that

[t]he cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction. . . .

---

[3] Crown and Tadros' argument that the trial court only reached its decision because it relied "exclusively on the fact that Tadros signed the agreement" is equally unavailing. This argument is based upon two questions by the trial court during the summary judgment hearing in which it inquired whether Tadros signed the License Agreement. In contrast, the trial court indicated that its order was based upon "the parties' summary judgment filings, the evidence submitted in support of those filings, and the hearing held by the Court. . . ." See *Love v. Fulton County Bd. of Tax Assessors*, 348 Ga. App. 309, 315 (1) (821 SE2d 575) (2018) ("A trial court is presumed to have followed the law in rendering a decision, unless and until that presumption is rebutted.").

Moreover, no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Citation omitted.) *Freund v. Warren*, 320 Ga. App. 765, 768-769 (1) (740 SE2d 727) (2013). Stated differently, "[i]f the terms of a contract are plain and unambiguous, the contractual terms *alone* determine the parties' intent." (Emphasis supplied.) *Garrett v. Southern Health Corp. of Ellijay*, 320 Ga. App. 176, 182 (1) (739 SE2d 661) (2013).

Here, Paragraph 14.I applies "[i]n the event [Holiday] terminates this License due to [Crown's] breach of any of its obligations under the License *prior to the time that [Crown] is authorized to use the System* at the Hotel[.]" (Emphasis supplied.) In that event, Crown must pay "to [Holiday], *as liquidated damages*, a lump sum" pursuant to certain calculations. (Emphasis supplied.) Moreover, Paragraph 14.I provides that Holiday and Crown

acknowledge and agree that it would be difficult to determine the injury caused to [Holiday] by termination of the License. [Holiday] and [Crown] *therefore intend and agree the above liquidated damages calculations* to be a reasonable pre-estimate of [Holiday's] probable loss. . . .

(Emphasis supplied.) In view of the plain and unambiguous language of the License Agreement, which twice references liquidated damages related to termination of the agreement before Crown had the authority to operate the hotel,[4] we conclude that the parties intended Paragraph 14.I to function as a liquidated damages provision, rather than a penalty, in the event the license terminated before Crown opened the hotel.[5]

(b) *Reasonable Pre-Estimate of Probable Loss*. Concerning the third factor of the liquidated damages test, "the touchstone question is whether *the parties employed a reasonable method* under the circumstances to arrive at a sum that reasonably

---

[4] In contrast, Paragraph 12.A provides that the term of the license "will expire without notice twenty (20) years from the date of opening of the Hotel under the System, *subject to earlier termination as set forth herein*." Paragraphs 12.B and 12.C outline instances in which Holiday may terminate the License Agreement before its expiration date. It is therefore plain that the liquidated damages provision of Paragraph 12.E addresses liquidated damages for which Crown would be liable in the event of termination of the agreement at some point after "the date of opening of the Hotel under the System[.]" To that end, the calculation of the liquidated damages under Paragraph 12.E depends upon the length of time the hotel has been in operation, which never occurred in this case.

[5] Tadros' post-deposition affidavit testimony that he did not personally negotiate Paragraph 14.I is of no moment. See generally *Freund*, 320 Ga. App. at 769 (1), n. 4 ("Parol evidence is not admissible to contradict or construe an unambiguous contract.") (citation omitted); *Fuqua Constr. Co. v. Pillar Dev*., 293 Ga. App. 462, 465-466 (667 SE2d 633) (2008); see also *Wright v. Safari Club International*, 322 Ga. App. 486, 493 (4) (745 SE2d 730) (2013) ("[P]arties to a contract are presumed to have read their provisions and to have understood the contents.") (citation omitted).

approximates the probable loss. . . ." (Citation omitted; emphasis supplied.) *Mariner*,

306 Ga. App. at 876 (1); see also *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 193 (1)

(612 SE2d 47) (2005).

In this case, the License Agreement provided that if Crown and Tadros

terminated the agreement before opening the hotel, they must pay to Holiday,

> as liquidated damages, a lump sum equal to the monthly average of all
> amounts that would have been payable to Licensor under paragraphs 3.B
> (1), (3) and (4) of this License assuming the Hotel had collected Gross
> Rooms Revenue based on the average daily revenue per available room
> for all hotels in the System for the previous twelve (12) months, as
> determined by Licensor, multiplied by the greater of (a) six (6) or (b) the
> number of full and partial months from the Term Commencement Date
> to the termination date of the License.

As a threshold matter, we note that the parties agreed that these calculations stated "a

reasonable pre-estimate of [Holiday's] probable loss and not a penalty. . . ." See

generally *Garrett*, 320 Ga. App. at 182 (1) (holding that "contractual terms alone

determine the parties' intent" when contract is plain and unambiguous). Though not

singularly determinative of the outcome, the parties' agreement on this point is not

without some value because our primary inquiry in this factor is "whether *the parties*

employed a reasonable method under the circumstances to arrive at a sum that

reasonably approximates the probable loss" and because, more basically, the words of a contract must mean something. (Citation omitted; emphasis supplied.) *Mariner*, 306 Ga. App. at 876 (1); see also *Brown v. Lumbermens Mut. Cas. Co.*, 390 SE2d 150, 153 (N. C. 1990) ("It is presumed that each part of the contract means something.") (citation and punctuation omitted).

Moreover, Holiday offered extensive testimony,[6] as well as spreadsheets, detailing the application of its liquidated damages formula for pre-operations terminations. In summary, for a pre-operations termination of the license, the liquidated damages formula applied

> data obtained from the invoices sent to other hotels in the Hotel Indigo System to estimate the Hotel Property's "prior" lost Net System Fees amount. Because of the uniformity in design, quality, marketing, and operations among hotels in the Hotel Indigo System, the average gross room revenue for Hotel Indigo hotels over a particular period of time is a reasonable way to estimate what the Hotel Property's gross room revenue would have been (and, thus, what the amount of system fees

---

[6] Contrary to Crown and Tadros' argument, deposition testimony by Holiday's corporate representative merely confirmed that the liquidated damages provision was a reasonable estimate of Holiday's damages in the event of a pre-operations termination of the License Agreement. Holiday's representative's testimony demonstrates that the formula did not establish the actual damages Holiday sustained, but, the whole point of the liquidated damages provision is to avoid the need to calculate actual damages in scenarios such as this.

would have been) over the same period of time if it had been operating as a Hotel Indigo. . . .

The formula also included a calculation "as if the Hotel Property was generating gross room revenue at the average rate generated by all hotels in the Hotel Indigo System for the twelve months preceding the agreement's termination." In addition, the formula multiplies "the estimated amount of monthly Net System Fees . . . by six months or the length of time that has elapsed between the execution and termination of the License Agreement, whichever is greater."[7] Finally, the liquidated damages calculation was based upon a 35-month span following the breach of an agreement that would have lasted at least 20 years, instead of accelerating damages for the entire length of the contract.[8]

---

[7] Crown and Tadros' argument that the liquidated damages provision is unreasonable because it does not address Holiday's expenses is without merit. As we have noted, the provision is based upon Holiday's "*Net* System Fees," (emphasis supplied), which are "Gross System Fees" minus credits. In other words, the calculation includes an estimate of the value Crown and Tadros would have paid Holiday under the License Agreement had the hotel opened, *less* the value of credits that would have reduced the amount owed.

[8] For this reason, Crown and Tadros' reliance upon *Jefferson Randolph Corp. v. Progressive Data Systems*, 251 Ga. App. 1 (553 SE2d 304) (2001), which analyzed a party's claim that liquidated damages were a penalty, and *Peterson v. P. C. Towers, L. P.*, 206 Ga. App. 591, 594 (3) (426 SE2d 243) (1992), in which a liquidated damages provision allowed a party to accelerate damages for the entire term of the

In effect, based upon their reliance upon specific elements of actual damages, Crown and Tadros essentially contend that Holiday must have shown with precision its actual damages rather than a reasonable estimate of its probable loss. That there may have been other reasonable methods to calculate Holiday's probable loss does not render the formula Holiday developed, and to which Crown and Tadros agreed, unreasonable. Therefore, we conclude that Holiday's liquidated damages formula — a detailed estimate necessitated by a lack of empirical data due to the failure to open the hotel as agreed — constituted "a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss. . . ." (Citation omitted.) *Mariner*, 306 Ga. App. at 876 (1).[9]

Put simply, the parties agreed — and we have so found — that the liquidated damages provision was a "reasonable pre-estimate of [Holiday's] probable loss" and, after selling the property to Holiday's competitor at a substantial profit without

applicable contract, is misplaced.

[9] We also find persuasive an opinion by the United States Court of Appeals for the Eleventh Circuit that specifically analyzed this factor as it related to Holiday's early termination liquidated damages provision. See *Holiday Hospitality Franchising, LLC v. Oakbrook Realty & Investments, LLC*, 817 FedAppx 694, 700 (III) (B) (11th Cir. 2020) (affirming summary judgment in favor of Holiday based upon liquidated damages provision).

13

Holiday's consent (which *itself* was required by Paragraph 10 of the License Agreement), Crown and Tadros now ask this Court to rescue them from the plain and unambiguous terms of their agreement. What is lacking is legal support for their request. In short, Crown and Tadros have offered no reason why the liquidated damages provision of the License Agreement should not be enforced. Accordingly, even when viewed most strongly in Crown and Tadros' favor, as we must, the record indicates that the liquidated damages provision of the License Agreement demonstrated "a reasonable pre-estimate of [Holiday's] probable loss." *Mariner*, 306 Ga. App. at 874-875 (1).

2. Next, Tadros asserts that the trial court erred in imposing prejudgment interest against him, above its $2.5 million damages award, because his liability under the Guaranty was capped at $2.5 million. Importantly, Tadros does not challenge the amount or the availability in general of the prejudgment interest awarded by the trial court; rather, Tadros argues simply that he cannot be liable for the interest in view of the liability cap in the Guaranty. We are not persuaded.

Paragraph 17.I of the Guaranty provides that

[n]otwithstanding anything stated herein to the contrary, the undersigned's collective liability under this Guaranty shall not exceed

14

the aggregate amount of Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000) for any matters other than [Holiday's] obligations to indemnify, defend or hold harmless under the License. Any matters related to [Holiday's] obligations to indemnify, defend or hold harmless under the License shall not be limited.

Prior to filing suit, Holiday demanded that Tadros, as Crown's guarantor, pay $2,228,936 in liquidated damages pursuant to Paragraph 14.I of the License Agreement. Holiday also recounted this demand in its complaint. In its order granting Holiday's motion for summary judgment, the trial court awarded Holiday $2,228,936 in liquidated damages and $271,064 in attorney fees, satisfying Tadros' liability cap of $2.5 million. However, the trial court also awarded $598,097.98 in prejudgment interest pursuant to OCGA § 7-4-15.

Relevant to this case, OCGA § 7-4-15 provides that

[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand.

Compare OCGA § 13-6-13 ("In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery."). Under OCGA § 7-4-15,

15

prejudgment interest — *which flows automatically from a liquidated demand* — is to be awarded upon a judgment for a liquidated amount. Thus, as long as there is a demand for prejudgment interest prior to the entry of final judgment, a trial court should award it.

(Emphasis supplied.) *Crisler v. Haugabook*, 290 Ga. 863, 864 (725 SE2d 318) (2012). "The purpose of prejudgment interest is to compensate the injured party for the delay in receiving money damages." *General Motors Corp. v. Moseley*, 213 Ga. App. 875, 889 (10) (447 SE2d 302) (1994), abrogated on other grounds by *Webster v. Boyett*, 269 Ga. 191, 196 (2), n. 26 (496 SE2d 459) (1998); accord *Denham v. Bedford*, 287 NW2d 168, 173 (III) (Mich. 1980) ("Interest and court costs are added to a judgment to recompense the prevailing party for the delay in payment of the money damages determined and to put back in his pocket some of the expense he incurs in instituting and prosecuting an action.") (citation and punctuation omitted.). As a result, prejudgment interest occupies a category separate from compensatory damages, including damages awarded for contractual liability. See generally *Sovereign Healthcare v. Mariner Health Care Mgmt. Co.*, 329 Ga. App. 782, 787 (2) (a), n. 5 (766 SE2d 172) (2014) (finding that definition of prejudgment interest "as a type of 'actual damages' incompatible with the recovery of liquidated damages . . . conflicts with the plain language of OCGA § 7-4-15"); *Walker v. Gwinnett Hospital*

16

*System*, 263 Ga. App. 554, 559 (2) (588 SE2d 441) (2003); *General Motors*, 213 Ga. App. at 889 (10) (finding that, rather than awarding prejudgment interest for punitive damages, "trial court properly considered only the judgment for compensatory damages in determining whether the plaintiffs were entitled to prejudgment interest"); see also *George v. National Water Main Cleaning Co.*, 77 NE3d 858, 865 (Mass. 2017) ("Prejudgment interest is not generally included within 'liquidated damages' under our common law of contract. In fact, prejudgment interest is not even a category of damages; where liquidated damages are awarded in a civil contract action, prejudgment interest is added to the award of liquidated damages.").

Therefore, because the award of prejudgment interest is mandatory once any prerequisites for such an award have been satisfied, it follows that *prejudgment interest* may not be limited by a provision that seeks generally to cap a party's *contractual* liability. Neither party has cited any Georgia case that squarely addresses Tadros' argument.[10] However, we find persuasive authority from other jurisdictions

---

[10] Tadros' primary argument — that the terms of the Guaranty should be strictly construed in his favor, as the guarantor — is unavailing. It is true that Tadros successfully limited his *contractual* liability under the Guaranty to $2.5 million, and the trial court's order is consistent with that limitation. But Tadros' contractual cap does not stretch so far as to encompass *prejudgment interest* which, as we have stated, comprises a category separate from damages for contractual liability. See *Sovereign*, 329 Ga. App. at 786-787 (2) (a) (finding that award of liquidated damages that

17

that share Georgia's public policy that, in certain contexts, allows the imposition of prejudgment interest over and beyond similar limitations of liability, including insurance policies. See *Burford Equipment Co. v. Centennial Ins. Co.*, 857 FSupp. 1499, 1506 (III) (M. D. Ala. 1994); *Denham*, 287 NW2d at 174 (III) (finding that "[i]f the legislative purpose was to compensate the prevailing party for the delay in payment of money damages and to cover the costs of litigation, then this legislative purpose can only be effectuated by the allowance of prejudgment interest, even if this interest exceeds the policy limits of an insurance contract"); but see *Strauss v. Farmers Ins. Exchange*, 31 CalRptr2d 811, 815 (III) (Cal. App. 1994) (finding that award of prejudgment interest in excess of policy limit unauthorized in view of express policy provision limiting amount of prejudgment interest liability).

Accordingly, to give effect to OCGA § 7-4-15, and recognizing the distinct purposes of prejudgment interest, we hold that prejudgment interest may be awarded over and beyond a contractual limitation of liability that does not expressly exclude or limit an award of prejudgment interest.[11]

---

purportedly constituted "the maximum as well as the minimum sum" was incorrect in view of OCGA § 7-4-15).

[11] Were we to accept Tadros' argument, there would be no incentive to remit liquidated damages payments and, therefore, the purpose of liquidated damages

18

In sum, we conclude that Holiday's liquidated damages provision is enforceable under Georgia law. Furthermore, we conclude the trial court did not err in imposing prejudgment interest against Tadros despite a limitation of his contractual liability in his personal guaranty. Therefore, we affirm the trial court's order granting Holiday's motion for summary judgment.

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur*.

---

generally and OCGA § 7-4-15 specifically would be nullified.